1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (149343)
2  THOMAS J. O'REARDON II (247592)
   600 B Street, Suite 1550
3  San Diego, CA 92101
   Telephone: (619) 338-1100
4  Facsimile: (619) 338-1101
   tblood@bholaw.com
5  toreardon@bholaw.com

6  HOFFMAN & FORDE, ATTORNEYS AT LAW
   SCHUYLER V.V. HOFFMAN V (255632)
7  DANIEL R. FORDE (248461)
   3033 Fifth Avenue, Suite 225
8  San Diego, CA 92103
   Telephone: (619) 546-7880
9  Facsimile: (619) 546-7881
   shoffman@hoffmanforde.com
10 dforde@hoffmanforde.com

11 Attorneys for Plaintiffs

12            UNITED STATES DISTRICT COURT

13            SOUTHERN DISTRICT OF CALIFORNIA

14 RICK DOLFO and SUSAN DOLFO, on        Case No.:  **11CV 2828 DMS BGS**
   behalf of Themselves, All Others Similarly
15 Situated and the General Public,      CLASS ACTION

16            Plaintiffs,               CLASS ACTION COMPLAINT

17        v.

18 BANK OF AMERICA, N.A. and BAC
   HOME LOANS SERVICING, LP,
19                                       DEMAND FOR JURY TRIAL
            Defendants.
20

21

22

23

24

25

26

27

28

**FILED**

DEC 0 5 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                         DEPUTY

00039251

Plaintiffs Rick and Susan Dolfo bring this action on behalf of themselves, all others similarly situated and the general public against defendants Bank of America, N.A. and BAC Home Loans Servicing, LP (referred to jointly as "Bank of America" where not otherwise described in their individual capacities). Plaintiffs allege on information and belief, except for information based on personal knowledge, as follows:

**NATURE OF THE ACTION**

1.      This is yet another tale of Bank of America cheating its customers.  In 2005, plaintiffs obtained a residential mortgage loan.  Bank of America subsequently bought the servicing rights to the loan. From the time the loan was issued, plaintiffs complied with their obligations under the loan agreement.  They made their monthly payments, maintained the required homeowner's insurance coverage and timely paid their property taxes.  Nonetheless, in December 2009, plaintiffs noticed on their monthly mortgage statement that Bank of America paid their property taxes and homeowner's insurance without plaintiffs' knowledge or consent, and even though plaintiffs also paid them. To fund the impound account, and without notifying plaintiffs, Bank of America took money from plaintiffs' monthly mortgage payment, not leaving enough to cover plaintiffs' monthly mortgage payment, throwing plaintiffs into default.  Once in default, Bank of America, as the loan servicer, was able to charge additional fees and penalties.  Bank of America also falsely reported to credit agencies that plaintiffs were in default on their mortgage.

2.      Plaintiffs were not notified that Bank of America intended to create an impound account or that it created one.  Plaintiffs never agreed to it.  Bank of America had no authority, contractual or otherwise, to open or fund the impound account.  There also was no need for an impound account as plaintiffs were already paying their insurance and taxes.

3.      Prior to filing suit, plaintiffs spent months trying to work with Bank of America to solve the problems created by Bank of America: to close the impound account, stop the double payment of homeowner's insurance and property taxes, stop the improper deduction from the monthly mortgage payments, reverse the improper default and have Bank of America correct the improper credit reporting.  But, just like millions of other Americans who have

BLOOD HURST & O'REARDON, LLP

1  tried to work with Bank of America, plaintiffs made no progress, and were constantly put off

2  by Bank of America, mislead and ignored.

3      4.    As a result of Bank of America's improper and unauthorized conduct, improper

4  taking of money intended for mortgage payments and the other improper conduct alleged,

5  plaintiffs have suffered damages, including harm to their credit-worthiness, credit history and

6  credit scores.  Bank of America refuses to notify the credit reporting agencies of its false

7  reports.

8      5.    Plaintiffs are not alone; Bank of America has improperly, unlawfully, and

9  without prior notice established impound accounts on behalf of other members of the Class

10  and taken their money to fund these improper impound accounts.  These acts and omissions

11  constitute unlawful, unfair and fraudulent conduct under California's Unfair Competition Law,

12  Business & Professions Code §17200 *et seq.* (the "UCL"), violate the Rosenthal Fair Debt

13  Collection Practices Act, Civil Code §1788 *et seq.*, and violate the Consumer Credit Reporting

14  Agencies Act ("FCRA"), Civil Code §1785.1 *et seq.*, constitute a conversion of money

15  entrusted to Bank of America and breach the mortgage agreements.

16      6.    On behalf of themselves and others similarly situated, plaintiffs also seek

17  declaratory relief to define the parties' rights and obligations and injunctive relief to compel

18  compliance with the terms of the mortgage agreement, to require Bank of America to correct

19  and repair Class members' credit ratings, and to otherwise correct and halt Bank of America's

20  ongoing misconduct – including the improper commencement of non-judicial foreclosure on

21  these properties secured by Bank of America loans.

22      7.    The Class consists of all those with residential mortgage loans secured by

23  property located in the State of California serviced by Bank of America, where Bank of

24  America created an impound account without the permission of the mortgagor while the

25  mortgagor was in compliance with the terms of his or her mortgage agreement at the time

26  Bank of America created the impound account.

27

28

BLOOD HURST & O'REARDON, LLP

Case No.

**JURISDICTION AND VENUE**

8.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which at least one member of the class of plaintiffs is a citizen of a State different from any defendant.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this district and because defendants:

        (a)     are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district;

        (b)     do substantial business in this district; and

        (c)     are subject to personal jurisdiction in this district.

**PARTIES**

10.     At all times relevant, plaintiffs Rick Dolfo and Susan Dolfo resided and continue to reside in San Diego, California.  During the class period, plaintiffs complied with all of their obligations under their residential mortgage agreement with Bank of America. They made their monthly payments, maintained the required homeowner's insurance coverage and timely paid their property taxes.  Nonetheless, in December 2009, plaintiffs noticed on their monthly mortgage statement that Bank of America paid their property taxes and homeowner's insurance without plaintiffs' knowledge, consent or instruction – and in violation of the terms of the loan agreement and California law.  As a result of Bank of America's unlawful and unfair conduct described herein, including its breaches of the mortgage agreement, plaintiffs suffered injury in fact and lost money or property, including incurring the cost of higher interest, greater indebtedness and lower credit worthiness.

11.     Defendant Bank of America, N.A. is a mortgage lender and servicer with headquarters in Charlotte, North Carolina. Bank of America was founded in San Francisco in 1904, is currently registered to do business in the State of California and does business in California.  It is the largest bank holding company in the United States by assets and the second largest by market capitalization.  Though long involved in the mortgage lending and

BLOOD HURST & O'REARDON, LLP

1    servicing business, Bank of America's purchase of Countrywide Financial in 2008 turned it

2    into the leading mortgage originator and servicer in the United States, controlling 20% to 25%

3    of the home loan market. Though it is one of the lenders responsible for the collapse of the

4    housing market, Bank of America received federal bailout money, obtaining at least $45

5    billion through the Troubled Asset Relief Program ("TARP").

6           12.    Defendant BAC Home Loans Servicing, LP is a subsidiary of Bank of

7    American, N.A., located in Calabasas, California. It produces mortgage loans on a national

8    scale, most of which are then sold into the secondary market, mainly in the form of mortgage-

9    backed securities. Defendant generally performs the ongoing servicing functions related to the

10    mortgage loans that it produces.

11           13.    At all relevant times, defendants both individually and collectively are and were

12    agents and/or joint venturers of each other and acted as a single enterprise, and in doing the

13    acts alleged herein, were acting within the course and scope of such agency.

14           14.    Each defendant had actual and/or constructive knowledge of the acts of the

15    other defendant as described herein, and ratified, approved, joined in, acquiesced in, and/or

16    authorized the acts of the other, and/or retained the benefits of said acts.

17                               **FACTUAL ALLEGATIONS**

18           15.    An impound account (also known as an "escrow account") refers to an account

19    maintained by a lender to collect insurance and tax payments required for the mortgaged

20    property. To fund the impound account, lenders divide the annual aggregate cost of the

21    insurance and tax into a monthly amount and add it to borrower's monthly mortgage payment

22    requirement.

23           16.    When applicable, lenders require that borrowers fund impound accounts in

24    order to provide the lender with protection against the state from seizing the mortgaged

25    property for non-payment of property taxes, and to ensure that borrowers will not be without

26    homeowner's insurance in the event that the property is damaged. An impound account helps

27    ensure that the only person who will become owner of the mortgaged property in case of

28    default will be the lender.

BLOOD HURST & O'REARDON, LLP

17.     Cal. Civil Code §2954(a)(1) mandates that only under specified conditions can a lender can require impound accounts as a condition of a loan secured by a deed of trust or mortgage on real property containing a single-family, owner-occupied home.  Such specific circumstances include "(C) upon a failure of the purchaser or borrower to pay two consecutive tax installments on the property prior to the delinquency date for such payments" or "(G) where a loan is refinanced or modified in connection with a lender's homeownership preservation program or a lender's participation in such a program sponsored by a federal, state, or local government authority or a nonprofit organization."   *See* Civil Code §2954(a)(1)(A)-(G).

18.     Pursuant to California law, an impound account established in violation of Civil Code §2954(a)(1), "is voidable, at the option of the purchaser or borrower, at any time."

19.     Further, lenders who receive prepayment of taxes and insurance into an impound account are required to pay borrowers a minimum 2% interest rate on such amounts:

> Every financial institution that makes loans upon the security of real property
> containing only a one- to four-family residence and located in this state…and
> that receives money in advance for the payment of taxes and assessments on the
> property, for insurance, or for other purposes relating to the property, shall pay
> interest on the amount so held to the borrower.  The interest on such amounts
> shall be at the rate of at least 2 percent simple interest per annum.

Civil Code §2954.8(a); *see also* Cal. Fin. Code §854.1 ("A borrower shall receive at least 2 percent simple interest per annum on impound account payments covered by Section 2954.8 of the Civil Code.").

20.     The mortgage agreement with plaintiffs and other Class members is a standardized adhesionary contract prepared, approved or purchased by Bank of America. Plaintiffs' Mortgage Agreement, which is an exemplar of those of the Class as is relevant to this action, is attached as Exhibit A.  The mortgage agreement does not authorize Bank of America or any other party to unilaterally establish an impound account or pay the taxes or insurance of its borrowers except under specific circumstances that do not apply to plaintiffs or

BLOOD HURST & O'REARDON, LLP

00039251

5

CLASS ACTION COMPLAINT

Case No.

1   Class members. That is, the mortgage agreements of plaintiffs and Class members all relate to

2   real property in California containing only a single-family, owner-occupied dwelling where:

3   (1) the Class member did not consent in the mortgage agreement, including on the Impound

4   Account Notice (defined below), to voluntarily establish an impound account; (2) the original

5   principal amount of the loan is less than 90 percent of the appraised value of the property

6   securing the loan; (3) the combined principal amount of all loans secured by the real property

7   is less than 80 percent of the appraised value of the property securing the loan; (4) the loan is

8   not made in compliance with the requirements for higher priced mortgage loans established in

9   Regulation Z; and (5) the loan has not been refinanced or modified in connection a lender's

10   homeownership preservation program or a lender's participation in such a program sponsored

11   by a federal, state, or local government authority or a nonprofit organization.

12       21.    To accept Bank of America's mortgage agreement, plaintiffs and Class

13   members were required to sign and return the mortgage agreement to Bank of America.

14       22.    Plaintiffs and members of the Class fulfilled all of the relevant terms and

15   conditions for which they were responsible under the terms of the mortgage agreements.

16   Further, plaintiffs and members of the Class paid their property taxes and insurance as required

17   under the terms of the mortgage agreements.

18       23.    In contrast, Bank of America breached the mortgage agreement by creating

19   impound accounts, taking money intended for principle and interest payments to improperly

20   pay taxes and insurance, and otherwise failing to comply with the terms of the mortgage

21   agreement. Bank of America created impound accounts for the mortgages of plaintiffs and

22   members of the Class in a deceptive manner by *inter alia*, providing them information about

23   mortgage modification options, but never disclosing that as a result of providing such

24   information Bank of America would establish impound accounts and pay taxes and insurance

25   premiums relating to the mortgaged property. In addition, Bank of America also improperly

26   reported to credit rating agencies that plaintiffs and Class members were delinquent or had

27   defaulted on their taxes and insurance premiums and owed money to Bank of America when

28   the money was not owed under the mortgage agreements. Finally, Bank of America has

BLOOD HURST & O'REARDON, LLP

00039251

1  improperly commenced non-judicial foreclosure on these properties secured by Bank of
2  America loans.

### PLAINTIFFS MR. AND MRS. DOLFO

24.     In or about August 2005, plaintiffs obtained a mortgage loan on their home in
San Diego, California from First Magnus Financial Corporation.  The loan was a 30 year
convertible jumbo PayOption ARM loan – the type of abusive loan that caused the implosion
of the housing market and current economic crisis.

25.     According to the payment schedule in their Mortgage Agreement, plaintiffs
were required to make the following monthly payments to Bank of America:

| Number of Payments | Amount of Payments | When Payments Are Due (Monthly Beginning) |
|---|---|---|
| 12 | $1,769.02 | 10/01/2005 |
| 12 | $1,901.70 | 10/01/2006 |
| 12 | $2,044.32 | 10/01/2007 |
| 12 | $2,197.65 | 10/01/2008 |
| 12 | $2,362.47 | 10/01/2009 |
| 300 | $3,772.80 | 10/01/2010 |

*See* Exhibit B (Federal Truth In Lending Disclosure Statement for plaintiffs' loan).

26.     According to their Mortgage Agreement, plaintiffs were not required to make
any future periodic payments to Bank of America other than the above-listed monthly
mortgage payments. *See id.*; *see also* Exhibit C (Payment Letter to Borrower) (listing "-0-" for
"Reserve For County Property Taxes," "Hazard Insurance Reserve," "Flood Insurance
Reserve," "City Property Taxes," and "Annual Assessments").

27.     In connection with their Mortgage Agreement, plaintiffs were presented with a
standardized notice entitled "NOTICE TO BORROWER – IMPOUND / ESCROW
ACCOUNT." *See* Exhibit D (the "Impound Account Notice").  According to the Impound
Account Notice, which plaintiffs were required to sign and date, the lender was "prohibit[ed]"

Case No.

00039251

BLOOD HURST & O'REARDON, LLP

1    from "requiring an impound or escrow account for the payment of taxes, insurance premiums,

2    or other purposes as a condition of the loan except in certain instances." *Id.* Such exceptions

3    included "a failure of the borrower to pay two consecutive tax installments on the property

4    prior to the delinquency date for such payments" or if both parties agreed to the establishment

5    of such an account. However, no exceptions applied to permit the establishment of an

6    impound account and plaintiffs indicated on the Impound Account Notice that: "I/We desire

7    not to establish an impound/escrow account." *Id.*

8        28.    In or about October of 2009, plaintiffs contacted Bank of America to discuss

9    modifying their existing home loan. During that conversation, Bank of America informed

10   plaintiffs that they were candidates for a mortgage modification program and that Bank of

11   America would send them a packet to complete within thirty days. However, like tens of

12   thousands of others, plaintiffs never received the modification program packet.

13       29.    In or about November 2009, Mr. Dolfo called Bank of America to inquire about

14   the status of the modification program packet. Mr. Dolfo was told that the packet should

15   arrive within another thirty days.

16       30.    In or about December 2009, plaintiffs learned that Bank of America made a

17   payment of $3,393.09 to the San Diego County Tax Collector for property taxes coming due

18   on their home. Plaintiffs were not notified beforehand nor did they authorize Bank of America

19   to pay their property taxes.

20       31.    In or about December 2009, and without notice or approval to do so, plaintiffs

21   were notified that Bank of America made a partial homeowner's insurance premium payment

22   of $862.50. About ten days later, and again with notice or approval, Bank of America paid the

23   balance of plaintiffs' homeowner's insurance premium balance of $91.50 to Travelers

24   Indemnity Co.

25       32.    In or about March 2010, and without notice or approval to do so, plaintiffs

26   learned that Bank of America made another payment to the San Diego County Tax Collector

27   for property taxes coming due on their home.

28

BLOOD HURST & O'REARDON, LLP

1    33.    In or about April 2010, and without notice or approval to do so, plaintiffs

2    learned that Bank of America established an impound account for their mortgage account.

3    34.    In or about July 2010, Mr. Dolfo called and spoke with a Bank of America

4    representative ("Amanda" at extension 8095 in the escrow department).   During that

5    conversation, and for the first time, Mr. Dolfo was told that Bank of America's policy was to

6    establish an impound account when a borrower is in a home mortgage modification program.

7    Mr. Dolfo told Bank of America's Amanda that his mortgage loan was not in a modification

8    program.   Mr. Dolfo then spoke with another Bank of America representative, "Maria" at

9    extension 5553 in the escrow department.   Maria admitted that the impound account was

10   improperly established, and told Mr. Dolfo that a request would be sent to the mortgage

11   modification department to remove the impound account from plaintiffs' loan.   Despite these

12   assurances, the impound account was not removed.

13   35.    On or about August 4, 2010, Mr. Dolfo called and spoke with a Bank of

14   America representative, who identified herself as "Cohar."   Cohar told Mr. Dolfo that Bank of

15   America had deleted the insurance payments from plaintiffs' impound account, but not the

16   property tax payments.   Cohar then told Mr. Dolfo that "Maria" would get back to him within

17   24 hours regarding the status of the impound account.   However, neither Maria nor anyone

18   else from Bank of America got back to Mr. Dolfo.

19   36.    In or about December 2010, and without notice or approval to do so, and

20   despite being told by plaintiffs to not do so, plaintiffs were notified that Bank of America

21   made another property tax payment of $3,395.67 to the San Diego County Tax Collector for

22   their home.

23   37.    In or about March 2011, and without notice or approval to do so, and despite

24   being told by plaintiffs to not do so, plaintiffs were notified that Bank of America made

25   another property tax payment of $3,395.67 to the San Diego County Tax Collector for their

26   home.

27   38.    Plaintiffs did nothing to justify the creation of an impound account or otherwise

28   authorize Bank of America to make property tax or homeowner's insurance payments.   From

BLOOD HURST & O'REARDON, LLP

00039251

1    the time the loan was issued, plaintiffs complied with their obligations under the loan

2    agreement.  Plaintiffs made their monthly payments, maintained the required homeowner's

3    insurance coverage and timely paid their property taxes.

4         39.    As a result of the improper establishment of the impound account and improper

5    tax and insurance payments, Bank of America also falsely reported to credit agencies that

6    plaintiffs were deficient on their loan.  These false reports have resulted in significant costs to

7    plaintiffs, including a substantial impact on their credit.

8         40.    In a letter dated August 25, 2011, and in response to plaintiffs' requests that

9    Bank of America close the improper impound account, Bank of America stated that it now

10   refused to close the impound account for two reasons: 1) because of a negative impound

11   balance and 2) delinquent taxes had been paid from plaintiffs' impound account and therefore,

12   according to Bank of America, they were required to maintain an impound account for the life

13   of the loan.  This letter is attached as Exhibit E.  That is, Bank of America was now using its

14   breaches of various duties to justify keeping the impound account open.

15        41.    The impound account was not created because of a negative impound balance

16   or because any delinquent taxes had been paid from the account.  No proper justification for

17   the impound account existed, including late monthly payments or that the loan to value ratio of

18   plaintiffs' principal balance exceeded statutory levels of the sale or appraisal value of their

19   home. *Id.*

20        42.    By letter dated September 19, 2011, Bank of America returned plaintiffs'

21   payment of $2,950.00.  Bank of America improperly refused to accept this payment amount –

22   which was the correct amount due under the terms of their Mortgage Agreement – purportedly

23   because the amount "does not represent the total due."

24        43.    After siphoning-off monthly principle and interest payments to fund the

25   improper impound account, on or about September 21, 2011, Bank of America filed a notice

26   of default ("NOD") to foreclose on plaintiffs' home.  As a direct result of the public filing of

27   the NOD, which Bank of America filed based on the false pretense that plaintiffs did not pay

28

BLOOD HURST & O'REARDON, LLP

00039251

10
CLASS ACTION COMPLAINT

Case No.

1  their property taxes and insurance, third parties such as real estate companies and debt

2  settlement agencies are continuously contacting plaintiffs.

3      44.    Bank of America has breached and is continuing to breach the Mortgage

4  Agreement by demanding payments from plaintiffs in excess of the principal and interest

5  charges set forth in the Mortgage Agreement.  Bank of America has also falsely informed

6  credit rating agencies that plaintiffs were delinquent on their loan, including their property tax

7  and homeowner's insurance payments, and did not inform these agencies that plaintiffs

8  disputed the debt, resulting in harm to plaintiffs' credit-worthiness, credit history and credit

9  score.  Plaintiffs have suffered financial loss as a result of their reduced credit scores.

10     45.    Beginning in July 2010, plaintiffs repeatedly contacted Bank of America to

11  question why Bank of America unilaterally created an impound account and paid their

12  property taxes and insurance premiums without their knowledge, consent or instruction.  A

13  recent billing statement for plaintiffs is attached as Exhibit F.  Plaintiffs were repeatedly

14  informed by Bank of America that the impound account was improperly established, would be

15  removed, and that plaintiffs had always timely paid their property taxes and insurance

16  premiums.  Plaintiffs lost financial resources investigating the impound account and related

17  payments, and providing additional requested documents concerning the loan to Bank of

18  America.  Bank of America has attempted to collect payments from plaintiffs in a deceptive

19  and unfair manner, including by calling plaintiffs multiple times daily claiming that they owed

20  monies to Bank of America that were not owed.  Bank of America has also served plaintiffs

21  the NOD, and a Notice of Intent to Accelerate and initiate foreclosure proceedings if the total

22  due on the Mortgage Agreement, including all impound account fees, plus all fees and costs,

23  are not paid.

24                    **CLASS ACTION ALLEGATIONS**

25     46.    Plaintiffs bring this lawsuit on behalf of themselves and the proposed class

26  members under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The proposed Class

27  consists of:

28

BLOOD HURST & O'REARDON, LLP

00039251

All persons who entered into a residential mortgage loan with Bank of America secured by property located in the State of California, where Bank of America created an impound account without the permission of the mortgagor while the mortgagor was in compliance with the terms of his or her mortgage agreement at the time Bank of America created the impound account.

Excluded from the Class are defendants and any of their officers, directors and employees.

47.     *Numerosity*.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains thousands of members.  While the precise number of Class members is unknown to plaintiffs, it is known to defendants.

48.     *Existence and Predominance of Common Questions of Law and Fact*. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  All members of the Class have been subject to the same conduct and their claims are based on standard form contracts.   The common legal and factual questions include, but are not limited to, the following:

(d)     whether defendants' alleged conduct breaches the mortgage agreement;

(e)     whether the alleged conduct constitutes violations of the laws asserted herein;

(f)     whether plaintiffs and Class members have sustained monetary or property loss and the proper measure of that loss; and

(g)     whether plaintiffs and Class members are entitled to declaratory and injunctive relief.

49.     *Typicality*.  Plaintiffs' claims are typical of the claims of the members of the Class in that they are members of the Class that they seek to represent.

50.     *Adequacy of Representation*.  Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs have retained counsel experienced in the prosecution of this type of class action litigation.  Plaintiffs have no adverse or antagonistic interests to those of the Class.

BLOOD HURST & O'REARDON, LLP

51.     *Superiority*.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the defendants.  Further, the adjudication of this action presents no unusual management difficulties.

52.     Unless a class is certified, defendants will retain monies received as a result of their conduct that was taken from plaintiffs and proposed Class members.  Unless a classwide injunction is issued, defendants will continue to commit the violations alleged, and the members of the Class will continue to be misled and denied their rights.  Bank of America has acted or refused to act on grounds that are generally applicable to the Class so that injunctive and declaratory relief is appropriate to the Class as a whole.

## COUNT I

### Breach of Contract

53.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

54.     Plaintiffs and members of the Class on one hand, and Bank of America on the other, entered into written, standardized residential mortgage loan agreements (the "contract" or "mortgage agreement(s)").  Under each Class member's mortgage agreement, Bank of America promised to provide a loan for the purchase of real property, and charge only those amount permitted under the mortgage agreement and as permitted by applicable law.  In exchange for the loan, plaintiffs and Class members agreed to make the aforementioned payments to Bank of America.

55.     Plaintiffs and members of the Class gave consideration that was fair and reasonable.  All conditions precedent to Bank of America's liability under its standardized mortgage agreement have been performed by plaintiffs and the Class.

00039251

Case No.
CLASS ACTION COMPLAINT

56.   Bank of America breached the terms of its mortgage agreement by creating impound account and paying property taxes and insurance relating to the underlying property, by charging late fees and penalties not due under the mortgage agreement, recording notices of default and otherwise proceeding with foreclosures, and reporting to credit agencies that plaintiffs and the Class were delinquent on their loan payments, property taxes and insurance payments.

57.   As a result of Bank of America's breach of the mortgage agreement, plaintiffs and members of the Class suffered and continue to suffer reasonable and foreseeable damages resulting from such breaches, including payment of increased interest, fees, and costs, higher principal balances, damage to their credit, foreclosure or costs and expenses incurred to prevent or fight foreclosure, and other damages in an amount to be proven at trial.

58.   Alternatively, plaintiffs seek specific performance of the contract because the legal remedies are inadequate.

## COUNT II

### Violations of the Unfair Competition Law, Business & Professions Code §17200, *et seq.*

59.   Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

60.   Business & Professions Code §17200 prohibits any "unlawful ... business act or practice." Bank of America has violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1709, 1710, 1711, 1785.1 *et seq.*, 1788, 2954 *et seq.*, Cal. Fin. Code §854.1, and the common law, including breaches of its contracts with the class members.

61.   Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

BLOOD HURST & O'REARDON, LLP

00039251

14
CLASS ACTION COMPLAINT

Case No.

62.     Business & Professions Code §17200 also prohibits any "unfair ... business act or practice."

63.     Bank of America's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §17200, *et seq.* in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

64.     There were reasonably available alternatives to further Bank of America's legitimate business interests, other than the conduct described herein.

65.     Business & Professions Code §17200 also prohibits any "fraudulent business act or practice."

66.     Bank of America's claims, nondisclosures and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200.

67.     Bank of America's conduct caused and continues to cause substantial injury to plaintiffs and the other Class members. Plaintiffs have suffered injury in fact and have lost money as a result of unfair conduct as they now owe additional interest, late fees and other costs. As a result of defendants' unfair practices plaintiffs' credit ratings have declined and they have lost money and property as a result thereof. Plaintiffs also spent money investigating Bank of America's unilateral decision to create an impound account and pay their property taxes and insurance, and subsequently to remove the impound account as it had promised to do.

68.     Bank of America has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling plaintiffs to judgment and equitable relief against defendants, as set forth in the Prayer for Relief.

69.     Additionally, pursuant to Business & Professions Code §17203, plaintiffs seek an order and injunction requiring Bank of America to immediately cease such acts of unlawful, unfair and fraudulent business practices and to take all steps necessary to correct the

BLOOD HURST & O'REARDON, LLP

1  credit ratings of Class members that have been negatively impacted by Bank of America's

2  unfair practices.   Further, pursuant to Business & Professions Code §17203, plaintiffs

3  seek an order and injunction prohibiting Bank of America from continuing with non-

4  judicial foreclosure of properties secured by Bank of America loans where the purported

5  default stems from the false pretense that plaintiffs did not pay their property taxes and

6  insurance and subsequently failed to appropriately fund an improper impound account.

### COUNT III

**Violation of the Rosenthal Fair Debt Collection Practices Act
Cal. Civil Code §1788 et seq.**

10       70.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above,

11  as if fully set forth herein.

12       71.     Bank of America is a debt collector within the meaning of California Civil

13  Code §1788.2(c) because it regularly engages in debt collection.   In its monthly payment

14  statements sent to plaintiffs and the Class, Bank of America also states that "this

15  communication is from a debt collector."   The monies allegedly owed by the plaintiffs and

16  members of the Class are debts within the meaning of California Civil Code §1788.2(d).

17       72.     California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act")

18  incorporates by reference and requires compliance with the provisions of the federal Fair Dept

19  Collection Practices Act, 15 U.S.C. §1692 et seq.   Cal. Civil Code §1788.17.

20       73.     By the acts and practices described herein defendants have violated these laws

21  as follows without limitation: (a) making false representations concerning the character,

22  amount or legal status of any debt, 15 U.S.C. §1692e(2); (b) communicating or threatening to

23  communicate to any person credit information which is known or which should be known to

24  be false, including the failure to communicate that a disputed debt is disputed, 15 U.S.C.

25  §1692e(8); (c) making false representations or using deceptive means to collect or attempt to

26  collect on any debt, 15 U.S.C. §1692e(10); and (d) using unfair or unconscionable means to

27  collect or attempt to collect any debt, including collecting amounts which were not expressly

28  authorized by the agreement creating the debt or permitted by law.  15 U.S.C. §1692f.

BLOOD HURST & O'REARDON, LLP

00039251

74.   Pursuant to California Civil Code §§1788.30 and 1788.17, plaintiffs and members of the Class are entitled to recover actual damages sustained as a result of Bank of America's violations of the Rosenthal Act.   Such damages include, without limitation, monetary losses and damages, which damages are in an amount to be proven at trial.   In addition, pursuant to California Civil Code §§1788.30 and 1788.17, because Bank of America's violations of the Rosenthal Act were committed willingly and knowingly, plaintiffs and members of the Class are entitled to recovery penalties of at least $1000 per violation as provided for in the Rosenthal Act.

## COUNT IV

### Violation of the Consumer Credit Reporting Agencies Act
### Cal. Civil Code §1785.1 *et seq.*

75.   Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

76.   Cal. Civil Code §1785.25 prohibits any person from furnishing to a credit reporting bureau information that such person knows or should know is incomplete or inaccurate, or furnishing the information that is subject to a continuing dispute between the consumer and that person without also including a notice that the information is disputed by the consumer.

77.   Bank of America has intentionally, or at a minimum, negligently, violated Civil Code §1785.25 by informing various credit reporting agencies that plaintiffs and members of the Class owed money to Bank of America that was not owed under the mortgage agreement and that was disputed by plaintiffs and the Class.   Bank of America knew or should have known that the money they reported as delinquent to the credit agencies was not owed or delinquent.

78.   As a result of Bank of America's violations of Cal. Civil Code §1785.25, and in accordance with Cal. Civil Code §1785.31, plaintiffs and members of the Class have incurred actual damages, including damaged credit, in an amount to be determined at trial.   Plaintiffs are entitled to punitive damages, and any other relief that the court deems just and proper.

BLOOD HURST & O'REARDON, LLP

00039251

1  Plaintiffs also seek any injunction directing Bank of America to stop its ongoing violations of

2  Cal. Civil Code §1785.1 *et seq.* and to correct the false reports previously made.

### COUNT V

### Conversion

5  79.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above,

6  as if fully set forth herein.

7  80.    Plaintiffs and other Class members paid Bank of America specific and

8  identifiable sums of money, which Bank of America improperly used to pay property taxes

9  and/or insurance premium payments rather than principal and interest on the mortgage loans.

10  Bank of America did not apply such monies to the mortgage loan as it promised.

11  81.    At the time of conversion, plaintiffs and Class members had an ownership

12  interest in the monies they paid to Bank of America.

13  82.    As a result of Bank of America's collection and conversion of the monies

14  discussed above, Bank of America is indebted to plaintiffs and each other Class member in a

15  sum certain, the amount of which can be proven at trial by reference to Bank of America's

16  own records.   Plaintiffs and Class members are entitled to recover said sums as money

17  converted by Bank of America from plaintiffs and Class members, and as damages for it.

### COUNT VI

### Declaratory Relief

20  83.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above,

21  as if fully set forth herein.

22  84.    A controversy has arisen and now exists between plaintiffs and Class members

23  on the one hand and Bank of America on the other.   The controversy between the parties

24  concerns the existing, standardized mortgage agreements between the parties and the parties'

25  rights and duties under the contract.  Plaintiffs and Class members contend that pursuant to the

26  contracts' terms, Bank of America violates the contract by creating impound accounts and

27  subsequently demanding and collecting impound account payment amounts as if such monies

28  were due and owing under the mortgage agreement.   Bank of America disputes these

BLOOD HURST & O'REARDON, LLP

1   contentions and contends that the impound account amounts are due and owing under the

2   mortgage agreement.

3       85.     Plaintiffs request a judicial determination of their rights and duties, and the

4   rights and duties of absent Class members and a declaration as to the effectiveness and validity

5   of the impound accounts, and a declaration as to whether Bank of America's demand of

6   impound account payments are authorized pursuant to the terms of the mortgage agreement.

7       86.     Plaintiffs and Class members also contend that pursuant to the contract's terms,

8   Bank of America violates the contract by improperly commencing non-judicial foreclosure on

9   properties secured by Bank of America loans under the false pretense that the borrower is in

10   default by not paying amounts necessary to fund the impound account improperly created to

11   pay property taxes and insurance as if such monies were due and owing under the mortgage

12   agreement.   Bank of America disputes these contentions and contends that the impound

13   account amounts are due and owing under the mortgage agreement.

14       87.     Therefore, plaintiffs also request a judicial determination of their rights and

15   duties, and the rights and duties of absent Class members and a declaration as to define the

16   parties' rights and obligations as to whether Bank of America must correct and repair Class

17   members' credit ratings, and halt the improper commencement of non-judicial foreclosure on

18   properties secured by Bank of America loans.

19                            **PRAYER FOR RELIEF**

20       Wherefore, plaintiffs pray for a judgment:

21       A.     Certifying the Class as requested herein;

22       B.     Awarding plaintiffs and the proposed Class members actual and punitive

23   damages;

24       C.     Awarding restitution to plaintiffs and the proposed Class members;

25       D.     Awarding declaratory and injunctive relief as permitted by law or equity,

26   including a judicial determination of the parties' rights and duties under the contract, enjoining

27   defendants from continuing the unlawful practices as set forth herein (including the improper

28   credit reporting and commencement and continuation of non-judicial foreclosure), ordering

BLOOD HURST & O'REARDON, LLP

1   specific performance by Bank of America, and directing defendants to identify, with Court

2   supervision, victims of its conduct and pay them restitution and disgorgement of all monies

3   acquired by defendants by means of any act or practice declared by this Court to be wrongful;

4       E.    Awarding attorneys' fees and costs; and

5       F.    Providing such further relief as may be just and proper.

6   **JURY DEMAND**

7       Plaintiffs demand a trial by jury on all issues so triable.

8   Dated: December 5, 2011

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247592)


By:    *s/ Timothy G. Blood*
        TIMOTHY G. BLOOD

600 B Street, Suite 1550
San Diego, CA  92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
toreardon@bholaw.com

HOFFMAN & FORDE, ATTORNEYS AT LAW
SCHUYLER V.V. HOFFMAN V (255632)
DANIEL R. FORDE (248461)
3033 Fifth Avenue, Suite 225
San Diego, CA 92103
Telephone: (619) 546-7880
Facsimile: (619) 546-7881
shoffman@hoffmanforde.com
dforde@hoffmanforde.com

Attorneys for Plaintiffs

BLOOD HURST & O'REARDON, LLP

00039251

20
CLASS ACTION COMPLAINT

Case No.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**FILED**
DEC 05 2011
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

## I. (a) PLAINTIFFS
RICK DOLFO and SUSAN DOLFO

**DEFENDANTS**
BANK OF AMERICA, N.A. and BAC HOME LOANS SERVICING LP

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Charlotte, NC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Timothy G. Blood, Blood Hurst & O'Reardon LLP
600 B Street, Suite 1550, San Diego CA 92101 619-338-1100

Attorneys (If Known)
**11CV2828 DMS BGS**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)
Cal. Bus. & Prof. §17200; Cal. Civ. Code §1788, 1785.1
Brief description of cause:
Breach of Contract; Violation of Cal. Consumer Prot. Stat.; Declaratory Relief

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ $5,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE
12/05/2011

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 32988   AMOUNT $350—   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

TAB 12/05/11

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS032988
Cashier ID: mbain
Transaction Date: 12/05/2011
Payer Name: BLOOD HURST OREARDON
----------------------------------
CIVIL FILING FEE
 For: DOLFO V BANK OF AMERICA
 Case/Party: D-CAS-3-11-CV-002828-001
 Amount:        $350.00
----------------------------------
CHECK
 Check/Money Order Num: 2039
 Amt Tendered:  $350.00
----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```