BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
toreardon@bholaw.com

Attorneys for Plaintiffs and Class Counsel

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK DOLFO and SUSAN DOLFO, on behalf of Themselves, All Others Similarly Situated and the General Public,<br><br>                    Plaintiffs,<br><br>          v.<br><br>BANK OF AMERICA, N.A. and BAC HOME LOANS SERVING, LP,<br><br>                    Defendants. | Case No.: 3:11-cv-2828-DMS-BGS<br><br>CLASS ACTION<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:       Hon. Dana M. Sabraw<br>Crtrm:      13A, 13th Floor<br>Date filed:  December 5, 2011 |

BLOOD HURST & O'REARDON, LLP

00067424

BLOOD HURST & O'REARDON, LLP

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    HISTORY OF THE LITIGATION ..................................................... 3

       A.    Pre-Filing Investigation ......................................................... 3

       B.    The Complaint and Answer .................................................... 4

       C.    The Class Certification Motion .............................................. 4

       D.    Discovery and Related Motion Practice ................................ 5

       E.    Settlement Negotiations ......................................................... 6

III.   SETTLEMENT TERMS ...................................................................... 7

       A.    The Settlement Class .............................................................. 7

       B.    Relief to Class Members ........................................................ 8

             1.    Option to Close Escrow ............................................... 8

             2.    Zero Interest Negative Escrow Repayment Options ............... 8

             3.    The Settlement Does Not Release Monetary Claims
                   and Instructs Class Members They May Wish to
                   Contact an Attorney to Pursue Monetary Relief for the
                   Conduct Alleged ........................................................... 9

             4.    Notice and Administration Costs, Attorneys' Fees and
                   Expenses, and Plaintiffs' Service Awards ........................... 9

       C.    The Class Notice Plan .......................................................... 10

IV.    THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR
       PRELIMINARY APPROVAL ........................................................ 11

       A.    The Strengths of Plaintiffs' Case and Risks Inherent in
             Continued Litigation and in Securing Certification Favor
             Preliminary Approval............................................................ 13

       B.    The Risk, Complexity, Expense, and Duration of the
             Litigation Favor Preliminary Approval ............................... 15

       C.    The Relief Provided by the Settlement Agreement Favors
             Preliminary Approval............................................................ 16

       D.    The Proposed Settlement Resulted from Serious, Informed
             and Non-Collusive Arm's-Length Negotiations.................... 17

       E.    The Settlement Agreement Is Fair to Plaintiffs and Class
             Members................................................................................ 19

V.      THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED ............................................................................. 20

VI.     THE PROPOSED SCHEDULE OF EVENTS ......................................... 22

VII.    CONCLUSION ........................................................................... 23

BLOOD HURST & O'REARDON, LLP

MEMORANDUM ISO PRELIMINARY APPROVAL

00067424

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010)............................................................. 18

*Churchill Village, LLC v. Gen. Elec. Co.*,
361 F.3d 566 (9th Cir. 2004) ............................................................................ 11

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) .......................................................................... 11

*In re Compact Disc. Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ......................................................................... 21

*Edwards v. Aurora Loan Servs., LLC*,
791 F. Supp. 2d 144 (D.D.C. 2011) ................................................................. 15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ......................................................................................... 20

*In re Employee Benefit Plans Secs. Litig.*,
No. 3-92-708, 1993 U.S. Dist. LEXIS 21226
(D. Minn. June 2, 1993)................................................................................... 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................... 12, 13, 17, 20

*Jack v. Hartford Fire Ins. Co.*,
No. 3:09-cv-1683-MMA(JMA), 2011 U.S. Dist. LEXIS 118764
(S.D. Cal. Oct. 13, 2011) ................................................................................. 13

*In re M.L. Stern Overtime Litig.*,
No. 07cv0118 BTM (JMA), 2009 U.S. Dist. LEXIS 94671
(S.D. Cal. October 9, 2009)............................................................................. 20

*Manchaca v. Chater*,
927 F. Supp. 962 (E.D. Tex. 1996) ................................................................. 18

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y 1984).................................................................... 16

BLOOD HURST & O'REARDON, LLP

00067424

*In re ML. Stern Overtime Litig.*,
   No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650
   (S.D. Cal. Apr. 13, 2009)................................................................. 12, 18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ...................................................................... 20

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................. 12

*Officers for Justice v. Civil Serv. Comm.*,
   688 F.2d 615 (9th Cir. 1982)................................................... 3, 12

*In re Pacific Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)...................................................... 11

*Rodriguez v. West Publ'g Co.*,
   563 F.3d 948 (9th Cir. 2009)............................................... *passim*

*In re Simon v. Toshiba America*,
   No. C 07-06202 MHP, 2010 U.S. Dist. LEXIS 42501
   (N.D. Cal. Apr. 30, 2010)........................................................ 19

*In re Skechers Toning Shoe Prods. Liab. Litig.*,
   No. 3:11-MD-2308-TBR, 2012 U.S. Dist. LEXIS 113641
   (W.D. Ky. Aug. 13, 2012) ....................................................... 21

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012)................................................ 21

*United States v. McInnes*,
   556 F.2d 436 (9th Cir. 1977) .................................................. 13

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ............................................. 11, 13

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ........................................................... 14

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ......................................... 18

*Williams v. Costco Wholesale Corp.*,
   No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674
   (S.D. Cal. Mar. 4, 2010) ......................................................... 19

BLOOD HURST & O'REARDON, LLP

*Young v. Polo Retail, LLC*,
No. C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077
(N.D. Cal. Oct. 25, 2006) ................................................................. 13

## Statutes and Rules

California Business & Professions Code §17200 *et seq.* ............................. 1, 4, 14

California Civil Code §1785.1 *et seq.* ...................................................... 1, 4

California Civil Code §1788 *et seq.* ......................................................... 1

California Civil Code §2954(a)(1) .......................................................... 1

Federal Rules of Civil Procedure
Rule 23 .................................................................................. 21, 22
Rule 23(b)(2) ....................................................................... 1, 2, 5, 7
Rules 23(b)(2) and (c)(4) ................................................................ 4
Rule 23(e) .............................................................................. 11
Rule 23(g) ............................................................................... 2
Rule 30(b)(6) ........................................................................... 5

## Other Authorities

David F. Herr, *Annotated Manual for Complex Litigation*,
§21.632 (4th ed. 2008) .................................................................. 3

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*,
§11.25 (4th ed. 2002) ..................................................................... 3

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*,
§11.41 (4th ed. 2002) ..................................................................... 18

*Manual for Complex Litigation* (4th ed. 2009) §§2l.632, 21.633 ..................... 12

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1   Plaintiffs Rick Dolfo and Susan Dolfo ("Plaintiffs") submit this
2   memorandum in support of the motion for entry of the [Proposed] Order re:
3   Preliminarily Approval of Class Action Settlement.  The Settlement Agreement
4   is filed concurrently herewith as Exhibit A.

5   **I.      INTRODUCTION**

6   Plaintiffs seek preliminary approval of the proposed Settlement of this
7   class action against defendants Bank of America, N.A. and BAC Home Loans
8   Servicing, LP (collectively, "Bank of America" or "Defendant").[1]  On June 3,
9   2013, the Court issued an order certifying the Class pursuant to Rule 23(b)(2)
10  and for declaratory relief only.  (D.E. No. 88.)  Consistent with the issues and the
11  Class certified by this Court, the Settlement meets Plaintiffs' goals through class
12  certification – to provide Class Members with an opportunity to close improperly
13  opened escrow accounts, repay, interest-free, any outstanding escrow account
14  balance, and notify Class Members that they may have claims to pursue for
15  monetary harm arising out of Bank of America's practices at issue.

16  Plaintiffs alleged that Bank of America's business practice of creating
17  escrow accounts for thousands of California mortgage borrowers without their
18  consent, and often without their knowledge, merely because they inquired about
19  a mortgage modification, violates Civil Code §2954(a)(1).  Plaintiffs alleged
20  causes of action for violations of California's Unfair Competition Law, Business
21  & Professions Code §17200 *et seq.* (the "UCL"), breach of contract, declaratory
22  relief, the Rosenthal Fair Debt Collection Practices Act, Civil Code §1788 *et seq.*
23  (the "Rosenthal Act"), and the Consumer Credit Reporting Agencies Act, Civil
24  Code §1785.1 *et seq.* (the "CCRAA").  (D.E. No. 1.)  Recognizing the potential
25  risks that individual issues relating to monetary harm or causation might
26  predominate in this Action, on January 11, 2013, Plaintiffs filed their motion for

27
28  _____
    [1]   All capitalized terms have the same meaning as set forth in the Settlement
    Agreement.

1
MEMORANDUM ISO PRELIMINARY APPROVAL

1  class certification requesting that the Court certify a class for injunctive and

2  declaratory relief only pursuant to Fed. R. Civ. Proc 23(b)(2).  (D.E. No. 48.)

3  After requesting supplemental briefing about whether Plaintiffs were excluding

4  all forms of monetary relief from the proposed injunction (D.E. No. 83), on June

5  3, 2013, the Court certified the following Class for injunctive and declaratory

6  relief only:

> All persons who had a residential mortgage loan secured by
> property located in the State of California and whose loan was
> serviced by Bank of America, where Bank of America created an
> impound account up until May 31, 2011, as a result of Bank of
> America's evaluation of eligibility for a loan modification pursuant
> to the Home Affordable Modification Program, and not because of a
> circumstances permitted by Civil Code §2954.  Excluded from the
> Class are those who entered a "trial period program" pursuant to the
> Home Affordable Modification Program and defendants and any of
> their officers, directors and employees.

14  (D.E. No. 88 at 11-12.)   Further, the Court appointed Plaintiffs as Class

15  Representatives and Timothy G. Blood and Thomas J. O'Reardon II of Blood

16  Hurst & O'Reardon, LLP as Class Counsel pursuant to Rule 23(g).  (*Id.* at 12.)

17  Further, in the order certifying the Class, the Court observed that Rule 23(b)(2)

18  properly applies because Plaintiffs "excluded [monetary] damages from their

19  requested relief."  (*Id.* at 10.)

20      Under the proposed Settlement, the allegedly improper escrow accounts

21  will be removed at the option of the Class Member.  Further, a detailed notice

22  will be sent directly to Class Members in the form of a letter, which is a more

23  approachable form of communication than typical class notices.  *See* Settlement

24  Agreement, §VII(A) and Ex. 4 (the Class Letter).  A toll-free telephone line will

25  be established, and the Class Letter and other Settlement documentation will be

26  posted on a Settlement Website created for this Action.  *Id.*, §VI(A)(2).  The

27  Class Letter will inform Class Members of the legal issue at stake and how it

28  may have affected the Class Member, their rights and the benefits afforded by

00067424

BLOOD HURST & O'REARDON, LLP

this Settlement, the deadlines by which to exercise their rights, and notify them that this Settlement does not release any claims for monetary relief arising out of the facts alleged in this Action and that they should contact an attorney to pursue potential litigation. *Id.*, §IV(A) and Ex. 4. The Class Letter Plan and the claims process, including processing Request Forms to close escrow accounts, will be administered by an independent Settlement Administrator paid for by Bank of America. *Id.*, §VI(A).

At the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the Settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the Settlement. *See* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §11.25 (4th ed. 2002); David F. Herr, *Annotated Manual for Complex Litigation* ("*Manual*") §21.632 (4th ed. 2008). In so doing, the Court reviews the Settlement to determine that it is not collusive and, "taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm.*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, as set forth in further detail below, the proposed Settlement plainly meets the standard for preliminary approval. Thus, Plaintiffs respectfully request that the Court enter the [Proposed] Order re: Preliminary Approval of Class Action Settlement that, among other things: (1) grants preliminary approval of the Settlement; (2) approves the proposed Class Letter Plan; and (3) schedules a Final Approval Hearing for the Settlement.

## II.    HISTORY OF THE LITIGATION

### A.    Pre-Filing Investigation

In October 2010, Plaintiffs' Counsel began investigating potential class action litigation against Bank of America relating to its establishment of

impound accounts (also known as escrow accounts) for previously non-impounded residential mortgages in connection with the bank's evaluation of borrower eligibility for a trial period program modification under HAMP. *See* Declaration of Timothy G. Blood in Support of Motion for Preliminary Approval of Class Action Settlement ("Blood Decl."), ¶3. This investigation included researching potentially applicable HAMP regulations and supplemental directives, as well as Civil Code provisions relating to home mortgage impound accounts. Plaintiffs' Counsel also researched and analyzed, through publicly-available sources, the potential uniformity and breadth of Bank of America's conduct, and researched and drafted a motion for a preliminary injunction.

## B.    The Complaint and Answer

On December 5, 2011, Plaintiff's Counsel filed the original class action complaint in this Action, entitled *Dolfo v. Bank of America, N.A.*, Case No. 11-cv-2828 (S.D. Cal.). (D.E. No. 1.) On behalf of a proposed California-only class, the complaint alleged a breach of contract, violations of California's UCL, the Rosenthal Act, the CCRAA, conversion, and sought declaratory relief. On February 8, 2012, Bank of America filed its answer to the complaint, in which it expressly denied the allegations and asserted twenty affirmative defenses. (D.E. No. 6.)

## C.    The Class Certification Motion

On January 11, 2013, after significant discovery, Plaintiffs filed their motion for class certification. (D.E. No. 48.) Simultaneous with this filing, and after engaging in discovery, Plaintiffs' Counsel filed a motion for leave to file a first amended complaint to clarify the scope of the proposed Class and seek certification under Rules 23(b)(2) and (c)(4). (D.E. No. 47.) The Parties fully briefed Plaintiffs' motion for class certification, and on April 19, 2013, this Court held a hearing on the motion. (D.E. No. 82.) Bank of America strenuously argued that Plaintiffs and Class Members were not injured by the opening of an

BLOOD HURST & O'REARDON, LLP

1   escrow account and advancement of escrow items, that defaults, late fees and
2   credit reports were not the result of the escrow account, and that Plaintiffs'
3   proposed "12-part injunctive remedy" demonstrated that the Class lacked the
4   cohesion necessary for a Rule 23(b)(2) class.  (D.E. No. 62.)

5   On April 29, 2013, the Court issued an order requesting supplemental
6   briefing on the class certification motion.  (D.E. No. 83.)  Pursuant to the order,
7   Plaintiffs were to clarify whether they were willing to exclude monetary relief
8   from a proposed injunction.  (*Id.* at 1.)  Plaintiffs and Defendant filed their
9   supplemental briefing on May 10, 2013, and May 17, 2013, respectively.  (D.E.
10  Nos. 84-85.)  Despite clarification from Plaintiffs about the scope of the issues
11  and Class they sought to certify, Bank of America still argued the Class was
12  comprised of borrowers who were subject to diverse, individual circumstances.
13  (D.E. No. 85; §IV(A) below.)

14  On June 3, 2013, the Court issued an order certifying the Class pursuant to
15  Rule 23(b)(2) and for declaratory relief only.  (D.E. No. 88.)  The certified Class
16  excluded any claims for monetary relief.

17  **D.    Discovery and Related Motion Practice**

18  Continuously throughout this litigation, Plaintiffs' Counsel engaged in
19  substantial discovery, formal and informal, including propounding and
20  responding to sets of written discovery, continuously meeting and conferring
21  with opposing counsel about discovery responses, compelling further responses
22  to discovery requests, reviewing substantial amounts of documents and ESI
23  produced by Bank of America, and taking Rule 30(b)(6) depositions about all of
24  the issues central to the facts and merits of this litigation.  The full details
25  surrounding the Parties' discovery-related activities are detailed in paragraphs 6-
26  15 of the Blood Declaration.  As a result of Plaintiffs' Counsel's efforts, they
27  received and reviewed approximately 50,000 pages of targeted discovery, and
28  took the depositions of the key persons at Bank of America involved in the

BLOOD HURST & O'REARDON, LLP

1    conduct at issue.  Plaintiffs also responded to substantial discovery from Bank of
2    America by volumes of documents and each sitting for full-day depositions.

3         As a result of the extensive discovery, certification, and settlement efforts,
4    Class Counsel was well-positioned to evaluate the strengths and weaknesses of
5    their case, as well as the ultimate fairness of the proposed Settlement.

6         **E.    Settlement Negotiations**

7         The Parties engaged in numerous, arm's-length mediation sessions.  At the
8    same time the Parties were engaging in extensive briefing and discovery efforts,
9    they were also engaging in numerous hard-fought, protracted and arms-length
10   settlement negotiations before Judge Skomal and a private mediator.  As detailed
11   in paragraphs 19-21 of the Blood Declaration, the Parties held numerous
12   mediation sessions with both the Honorable Bernard G. Skomal and Scott S.
13   Markus, Esq. of Agreement.com / PMA Dispute Resolution.  These mediation
14   sessions occurred before and after the Court issued its order granting class
15   certification, and before and after both sides had completed a significant amount
16   of discovery.  Finally, at the conclusion of the second full-day private mediation
17   session on July 9, 2013, the Parties reached a class settlement and executed a
18   settlement term sheet.  Nonetheless, at the time the class settlement was reached,
19   Plaintiffs' separate individual monetary claims remained unresolved.  Class
20   Counsel did not negotiate those claims until after executing the term sheet that
21   detailed the Class resolution.

22        On August 19, 2013, the Parties held another in-person settlement
23   conference with Judge Skomal in an attempt to resolve the Plaintiffs' individual
24   monetary claims.  (D.E. No. 102.)  With the assistance of Judge Skomal, the
25   Parties ultimately reach an agreement in principle resolving the Plaintiffs'
26   monetary claims, the terms of which are reflected in the Court's Finding Re:
27   Named Plaintiffs' Potential Recovery.  (D.E. No. 103.)  In essence, the amount
28

BLOOD HURST & O'REARDON, LLP

of money to be paid to Plaintiffs for their individual claims was determined by Judge Skomal based on evidence submitted by the Plaintiffs.

Every aspect of this Settlement was heavily negotiated, including the terms of injunctive relief, each aspect of the Settlement Agreement and exhibits, the release, the process for closing escrow accounts, the process for obtaining a no-interest payment plan option to repay outstanding escrow balances, and the Class Member notice and claims protocols. Although all material terms had been agreed upon, over the last few months, the Parties have continued to exchange drafts of each of the Settlement's exhibits and to negotiate the precise wording of the Settlement Agreement. This process was also hard-fought and protracted.

Class Counsel have determined that a settlement of the Action on the terms reflected in this Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Class.

## III.   SETTLEMENT TERMS

The Settlement Agreement, filed as Exhibit 1 with this motion, contains the complete terms of the Settlement, which are summarized below.

### A.   The Settlement Class

Consistent with the Class certified by this Court, the Settlement Agreement defines a settlement Class under Rule 23(b)(2):

> All persons who had a residential mortgage loan secured by property located in the State of California and whose loan was serviced by Bank of America, where Bank of America created an impound account up until May 31, 2011, as a result of Bank of America's evaluation of eligibility for a loan modification pursuant to the Home Affordable Modification Program, and not because of a circumstances permitted by Civil Code §2954. Excluded from the Class are those who entered a "trial period program" pursuant to the Home Affordable Modification Program and defendants and any of their officers, directors and employees.

*See* Settlement Agreement, §II(A)(6); *see also* D.E. No. 88 (Class Certification Order) at 11-12.

**B.      Relief to Class Members**

**1.      Option to Close Escrow**

Under the Settlement, Class Members will have the option of closing the escrow account associated with their mortgage loan at issue if it is currently serviced by Bank of America. *See* Settlement Agreement, §IV(A). This is a meaningful benefit because the bank's ordinary procedure is to not close a customer's escrow accounts unless there is a zero balance. *See, e.g.*, D.E. No. 48-1 (Plaintiffs' Memo ISO Class Certification) at 8 (referencing notations from Plaintiffs' loan servicing file attached thereto as Ex. G, at Rows 1572-74).

As prominently noted on the first page of the Class Letter, to elect to close escrow, all Class Members must do is submit the Request Form by fax, mail, or online at the Settlement Website. Settlement Agreement, §§V(A)-(B), and Exhibit 4 at 1. The Request Form will be directly mailed to Class Members enclosed with the Class Letter. The Request Forms will also be available at the Settlement Website, and a link to the Request Forms will be posted on Class Counsel's website. *Id.*, §V(B). In addition to the independent Settlement Administrator being available to answer any questions, Bank of America is also training a team of employees to specifically handle this Settlement, including closing escrow accounts, and providing zero interest repayment options (discussed below).

**2.      Zero Interest Negative Escrow Repayment Options**

In addition to the option to close their escrow accounts, under this Settlement, for those loans Bank of America currently services, Bank of America will provide Class Members a zero-interest repayment option for negative escrow account balances. *See* Settlement Agreement, §IV(B). Thus, the Settlement provides Class Members not just the option to close escrow accounts even though it carries an outstanding balance, but also affords them the opportunity to pay all outstanding amounts over time, interest-free.

BLOOD HURST & O'REARDON, LLP

### 3. The Settlement Does Not Release Monetary Claims and Instructs Class Members They May Wish to Contact an Attorney to Pursue Monetary Relief for the Conduct Alleged

The Settlement does not release monetary claims arising out of the conduct at issue in this lawsuit. *See* Settlement Agreement, §VIII(B)(1) ("The release does not include any action, claim, demand or cause of action of whatever kind or nature for monetary relief."). Consistent with the order granting class certification for injunctive and declaratory relief only, the Settlement also provides an important benefit in the form of advising Class Members clearly and prominently in the Class Letter that they may have claims for damages or other monetary relief arising out of Bank of America's conduct at issue, and that to pursue claims they should consult an attorney. *Id.*, Ex. 4 at 2.

### 4. Notice and Administration Costs, Attorneys' Fees and Expenses, and Plaintiffs' Service Awards

All Notice and Claims Administration Expenses, attorneys' fees and expenses, and plaintiff service awards will be paid by Bank of America. *See* Settlement Agreement, §§V(E), IX(B), IX(C). In connection with final approval, Class Counsel will make an application for an award of attorneys' fees not to exceed $650,000 (which is less than Plaintiffs' Counsel's lodestar), and for an award reimbursing Plaintiffs' Counsel for their out-of-pocket expenses reasonably incurred (which is approximately $25,000 to date). *Id.*, §IX(A). Bank of America agrees to at most oppose any amount that exceeds $400,000. *Id.* Bank of America also agrees not to oppose any request for Court-awarded service awards of $7,500 each to Plaintiffs Rick Dolfo and Susan Dolfo. *Id.*, §IX(C).

### C.    The Class Notice Plan

The Parties have developed a notice plan with the help of Garden City Group, Inc., a firm that specializes in developing class action notice plans. *See* Settlement Agreement, §VII(A).

The plain English Class Letter and accompanying Request Form will be sent by direct mail to Class Members. To facilitate this direct notice, no later than ninety (90) days before the Final Approval Hearing, Bank of America will provide the Settlement Administrator with the names and contact information for Class Members. *Id.*, §VII(A)(1). No later than sixty (60) days before the Final Approval Hearing, the Class Letter and Request Form will be mailed to the last known address (after updating addresses by reference to the National Change of Address Database) of all Class Members. *Id.*, §VII(A)(2) (the "Initial Mailed Notice"). For all Class Letters that are returned as undeliverable, the Settlement Administrator will perform address traces and re-mail Class Letters and Request Form to applicable Class Members. *Id.*, §VII(A)(3) (the "Notice Re-mailing Process").

Additionally, the Settlement Administrator will design and facilitate a website set up for this Settlement (the "Settlement Website"). The Class Letter, Request Form, and other Settlement related documents and deadlines will be posted on the Settlement Website. The address of the Settlement Website, www.BofAEscrowSettlement.com (a web address ideally suited for this Action), will appear prominently throughout the Class Letter, and will be hyper-linked from Class Counsel's website. The short and simple online Request Form, which requires checking just one box to close escrow, can be completed from and submitted at the Settlement Website. *See* Settlement Agreement, Ex. 2. The Request Form can also be returned via mail with postage paid by Bank of America or via fax. *Id.*, §V(B).

The Class Letter also provides instructions in Spanish directing Class Members to the Settlement Website for additional information in Spanish. *See id.*, Ex. 4 at 2 (states in bold, "*Para información en español, llamen al 1-800-xxx-xxx o visite la página web, www.BofAEscrowSettlement.com*"). The Settlement Administrator will maintain a 24-hour toll-free telephone line. Through this toll-free number, which is repeated throughout the Class Letter, English and Spanish speakers may speak with live, English and Spanish-speaking operators who have been trained to discuss the Settlement. *Id.*, §§VI(A)(1), VI(B)(1). The Settlement Website will also contain a unique feature permitting Class Members to view the Settlement Website in Spanish through Google Translate. *See* Settlement Agreement, Ex. 3 (Claims Protocol and Class Letter Plan) at ¶3(a).

## IV.   THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

Settlements of class actions are strongly favored. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). By their very nature, because of the uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits…which frequently present serious problems of management and expense"). Moreover, the Court should give a presumption of fairness to arm's-length settlements reached by experienced counsel. *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]"). Rule 23(e) sets forth a "two-step process in which the

BLOOD HURST & O'REARDON, LLP

1    Court first determines whether a proposed class action settlement deserves
2    preliminary approval and then, after notice is given to class members, whether
3    final approval is warranted." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
4    221 F.R.D. 523, 525 (C.D. Cal. 2004).

5        On preliminary approval, the court does not make a full and final
6    determination regarding fairness. "Because class members will subsequently
7    receive notice and have an opportunity to be heard," the court "need not review
8    the settlement in detail at this juncture." *In re ML. Stern Overtime Litig.*, No. 07-
9    CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *9 (S.D. Cal. Apr. 13,
10   2009). "[I]nstead, preliminary approval is appropriate so long as the proposed
11   settlement falls 'within the range of possible judicial approval.'" *Id.* at *9-10
12   (quoting *Newberg on Class Actions*, §11.25 (4th ed. 2002)); *see also Manual for*
13   *Complex Litigation* (4th ed. 2009) §§2l.632, 21.633. At this stage, the Court
14   need only conduct a *prima facie* review of the relief and notice provided by the
15   Settlement Agreement to determine whether notice should be sent to the
16   settlement Class Members. *In re ML Stern,* 2009 U.S. Dist. LEXIS 31650, at *9-
17   10. The Court's review is "limited to the extent necessary to reach a reasoned
18   judgment that the agreement is not the product of fraud or overreaching by, or
19   collusion between, the negotiating parties, and that the settlement, taken as a
20   whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*,
21   688 F.2d at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.
22   1998). This is a minimal threshold:

23       [I]f the proposed settlement appears to be the product of serious,
24       informed, non-collusive negotiations, has no, obvious deficiencies,
         does not improperly grant preferential treatment to class
25       representatives or segments of the class, and ***falls within the range***
26       ***of possible approval***, then the court should direct that the notice be
         given to the Class members of a formal fairness hearing . . . .
27

28

BLOOD HURST & O'REARDON, LLP

*Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. Oct. 25, 2006) (emphasis added).

The Ninth Circuit has articulated six factors to use in evaluating the fairness of a class action settlement at the preliminary approval stage: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; and (6) the experience and views of counsel. *Jack v. Hartford Fire Ins. Co.*, No. 3:09-cv-1683-MMA(JMA), 2011 U.S. Dist. LEXIS 118764, at *11 (S.D. Cal. Oct. 13, 2011), citing *Molski v. Gleich*, 318 F.3d 937, 954 (9th Cir. 2003) (*overruled in part on other grounds*); *Hanlon*, 150 F.3d at 1026 (the court's task is to "balance a number of factors," including "the risk, expense, complexity, and likely duration of further litigation," "the extent of discovery completed and the stage of the proceedings," and "the amount offered in settlement").

Here, the proposed settlement plainly satisfies the standard for preliminary approval, as there is no question as to its fairness, reasonableness and adequacy, placing it squarely within the range of possible approval.

**A.    The Strengths of Plaintiffs' Case and Risks Inherent in Continued Litigation and in Securing Certification Favor Preliminary Approval**

Settlements resolve the inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions. *See Van Bronkhorst*, 529 F.2d at 950; *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). This action is not unique in this regard – the Parties disagree about the merits, and there is substantial uncertainty about the ultimate outcome of this Action.

Assuming that litigation was to proceed, the hurdles that Plaintiffs face prior to trial are substantial. As a preliminary matter, Bank of America filed a

1   motion for clarification or reconsideration of the Court's order granting class

2   certification.  (D.E. No. 90.)  If successful, the motion might have significantly

3   narrowed the scope of the certified litigation.  In its motion, Bank of America

4   requested that the Court clarify its belief that the order granted certification of

5   Plaintiffs' UCL and declaratory relief claims only.  Bank of America also argued

6   that discovery must be limited to conform with its narrow interpretation of the

7   Court's certification order.  The Parties executed the settlement term sheet before

8   Plaintiffs' deadline to file a response to the motion for clarification.

9       Bank of America was likely to file a motion for decertification or motion

10  for summary judgment because it has always strenuously argued that Plaintiffs'

11  cannot satisfy the standards of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541

12  (2011), and the Class is comprised of borrowers who were subject to diverse,

13  individual circumstances.  *See, e.g.*, D.E. No. 85 at 2.  Similarly, Bank of

14  America has also argued that individual defenses predominate and would make a

15  trial unmanageable.  For example, Bank of America argues that it has defenses to

16  the claims of certain Class Members because they executed unique contracts,

17  consented to the creation of escrow accounts, and any negative credit reporting

18  was due to factors unrelated to an escrow account.  *Id.* at 4.  According to Bank

19  of America, "[t]o consider the proposed injunction, the Court would have to

20  conduct at least a six-part inquiry [unique] for each class member."  *Id.*

21      On the merits, Bank of America contends that HAMP guidelines permitted

22  (or even required) opening escrow accounts, and borrowers all consented to

23  escrow accounts under the circumstances at issue.  For example, during

24  deposition, Bank of America's corporate designee cited the following language

25  from a HAMP supplemental directive: "The borrower agrees to set up an escrow

26  account for taxes and hazard and floor insurance prior to the beginning of the

27  trial period if one does not currently exist."

28

Given these considerations, preliminary approval of the Settlement Agreement is appropriate to avoid the uncertainties of continued litigation.

## B.   The Risk, Complexity, Expense, and Duration of the Litigation Favor Preliminary Approval

In addition to the substantial risks and uncertainty inherent in continued litigation, the Parties face the certainty that further litigation would be expensive, complex, and time consuming.

Here, the proposed Settlement specifically addresses the alleged improper conduct certified for injunctive and declaratory relief by providing Class Members with an opportunity to close unwanted escrow accounts, repay negative escrow balances interest-free over time, and notify them that they may have claims for monetary damages and they should consult an attorney. The proposed Settlement is able to provide these benefits without the risk and delays of continued litigation, trial and appeal. The expense, complexity and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement. Litigating this class action through trial would undoubtedly be time-consuming and expensive. As with most class actions, this Action is complex. For example, this Action involves wading through and interpreting numerous guidelines and directives issued concerning the HAMP program. As one court described the program, "HAMP is a creative, complex, and still evolving program, created in response to a grave economic crisis." *Edwards v. Aurora Loan Servs., LLC*, 791 F. Supp. 2d 144, 155 (D.D.C. 2011). Bank of America is a sophisticated corporation with teams of employees working on interpreting HAMP guidelines and implementing what it believes were consistent policies and procedures. Continued litigation would require a significant number of additional depositions, including of the nine ESI custodians the Parties were able to winnow from a much broader set of potentially relevant employees. Plaintiffs' Counsel was also faced with compelling certain discovery that Bank of America

refused to provide.  This was particularly true given its narrow interpretation of the class certification order.  Question about the requirements for opening escrow accounts in the HAMP evaluation process, and factors leading to negative credit reports were vigorously disputed by the Parties and would require analysis by banking experts for both Parties.  For example, Plaintiffs hired an expert to review HAMP regulations and provide expert opinion about banking policies, HAMP requirements, and borrower consent issues.  At a minimum, absent settlement, litigation of these issues would likely continue for substantial time through the expert stage, summary judgment and/or a motion for decertification before Plaintiffs or the Class would see any resolution.  That a settlement would eliminate the delay and expenses strongly weighs in favor of approval.  *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y 1984).

By reaching this Settlement, the Parties will avoid protracted litigation and establish a means for prompt resolution of Class Members' claims.  The avenue of relief provided by the Settlement ensures meaningful benefits to Class Members.  Given the alternative of continued, long and complex litigation before this Court, the risks involved in such litigation and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.

## C.    The Relief Provided by the Settlement Agreement Favors Preliminary Approval

The Settlement Agreement provides real relief for the Class.  Plaintiffs alleged that Bank of America improperly and without consent opened and funded escrow accounts for loans owned by Class Members during initial eligibility verification and prior to being accepted into a HAMP trial period program.  (D.E. No. 88 at 2.)  If and when Class Members realized that a portion of their monthly payment was being funneled to pay down an outstanding escrow balance (resulting in a negative outstanding balance), they contacted Bank of America.

BLOOD HURST & O'REARDON, LLP

1  However, pursuant to its internal guidelines Bank of America refused to close
2  escrow accounts unless and until the outstanding balance was paid in full.  *See*
3  §III(B)(1) above.    Under the Settlement, and even if there is a negative
4  outstanding balance, Bank of America will close the escrow accounts of any
5  eligible Class Member who submits the simple Request Form.  Moreover, Bank
6  of America will offer these Class Members a no-interest option to repay the
7  negative escrow account balance over time.    Finally, Class Members are
8  informed that they may have claims for monetary damages and instructed that
9  they may wish to consult an attorney.

10  Nevertheless, in evaluating the fairness of the consideration offered in
11  settlement, it is not the role of the court to second-guess the negotiated resolution
12  of the parties.  "'[T]he court's intrusion upon what is otherwise a private
13  consensual agreement negotiated between the parties to a lawsuit must be limited
14  to the extent necessary to reach a reasoned judgment that the agreement is not the
15  product of fraud or overreaching by, or collusion between, the negotiating
16  parties, and that the settlement, taken as a whole, is fair, reasonable and adequate
17  to all concerned.'"  *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688
18  F.2d at 625); *accord Rodriguez*, 563 F.3d at 965.  The issue is not whether the
19  settlement could have been better in some fashion, but whether it is fair:
20  "Settlement is the offspring of compromise; the question we address is not
21  whether the final product could be prettier, smarter or snazzier, but whether it is
22  fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.

23  **D.    The Proposed Settlement Resulted from Serious, Informed and**
24  **Non-Collusive Arm's-Length Negotiations**

25  The Parties' arm's-length settlement negotiations and participation in
26  numerous mediation sessions with Judge Skomal and Scott Markus, Esq. further
27  demonstrates the fairness of the Settlement that was reached, and that the
28  Settlement is not a product of collusion.  *See* Blood Decl., ¶¶19-21.  Typically,

BLOOD HURST & O'REARDON, LLP

"[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." *Newberg*, §11.41; *see also In re Employee Benefit Plans Secs. Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226, at *17 (D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement").

Here, Counsel for Bank of America and Plaintiffs each zealously negotiated on behalf of their clients' best interests. The Parties engaged in protracted negotiations with the assistance of Judge Skomal and Mr. Markus, an experienced and well-respected mediator with PMA Dispute Resolution in San Diego. During these negotiations, Plaintiffs and Class Counsel, who are experienced in prosecuting complex class action claims, had a "clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985); *see also Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). Moreover, the fact that the Settlement was negotiated over the course of several mediation sessions, in front of two experienced mediators, is one factor that demonstrates the Settlement was anything but collusive. *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-length negotiations, including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a procedurally sound manner."); *In re M.L. Stern*, 2009 U.S. Dist. LEXIS 31650, at *13 (granting preliminary approval and stating that "the settlement was reached with the supervision and assistance of an experienced and well-respected independent mediator"). Further, the nature of the subsequent negotiations between the Parties, the experience of counsel as longstanding class action attorneys, and the fair result reached are illustrative of the arms-length negotiations that led to the Settlement Agreement.

### E. The Settlement Agreement Is Fair to Plaintiffs and Class Members

The proposed Settlement is fair as to all Class Members in that it provides eligible Class Members with an opportunity to close unwanted escrow accounts, repay balances over time interest-free, and informs them all about potential claims for monetary damages.  To exercise their settlement rights and close their escrow accounts, all eligible Class Members must do is check a single box on the short Request Form, and submit it online or through the mail using the postage pre-paid means provided in the packet that will be directly mailed.  *See* Settlement Agreement, §§V(A)-(B), and Ex.3 (Claims Protocol and Class Letter Plan) at ¶2(b).  Further, Plaintiffs Rick Dolfo and Susan Dolfo, do not receive any unduly preferential treatment under the Settlement.  With the exception of modest $7,500 service awards to account for their willingness to step forward and represent other consumers, and to compensate them for their time and effort devoted to prosecuting the common claims, Plaintiffs are treated the same as every other Class Member.  For example, Plaintiffs each responded to written discovery, produced hundreds of pages of documents, sat for full-day depositions, attended mediation sessions before Judge Skomal and Mr. Markus, participated in frequent in-person and telephonic conferences with Plaintiffs' Counsel, and devoted time and energy to gathering substantial information from third-parties in response to requests from counsel for the purpose of furthering the litigation.  Such service awards are "fairly typical in class action cases." *Rodriguez,* 563 F.3d at 958; *see also In re Simon v. Toshiba America,* No. C 07-06202 MHP, 2010 U.S. Dist. LEXIS 42501, at *12-13 (N.D. Cal. Apr. 30, 2010); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674, at *10 (S.D. Cal. Mar. 4, 2010) ("Although [plaintiff] seeks a $5,000 service fee for himself which is not available to other class members, the fee appears to be reasonable in light of [plaintiff's] efforts on behalf of the class

00067424

BLOOD HURST & O'REARDON, LLP

members."); *In re M.L. Stern Overtime Litig.*, No. 07cv0118 BTM (JMA), 2009 U.S. Dist. LEXIS 94671, at *11 (S.D. Cal. October 9, 2009) (granting final approval and awarding class representative class enhancement awards of $15,000 per class representative).

## V. THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, and the class members' rights under the settlement. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.  In this Circuit, it has long been the case that a notice of settlement will be adjudged "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill*, 361 F.3d at 575); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery).  The notice should also present information "neutrally, simply, and understandably," including "describ[ing] the aggregate amount of the settlement fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.

The proposed Notices more than satisfy these requirements.  The Parties have negotiated and drafted a class notice in the form of the simple terminology Class Letter, which includes: (1) basic information about the lawsuit; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class

BLOOD HURST & O'REARDON, LLP

1   Members can exercise their right to object to the Settlement; (5) an explanation

2   about the release in this Settlement, including that it does not release any claims

3   for monetary relief (and Class Members may wish to consult an attorney about

4   those claims); (6) the names of counsel for the Class and information regarding

5   attorneys' fees, expenses, and service awards; (7) the fairness hearing date; (8) an

6   explanation of eligibility for appearing at the fairness hearing; and (9) the

7   Settlement Website address and a toll free number where additional information

8   can be obtained. *See* Settlement Agreement, Ex. 4 (Class Letter).

9   The contents of the proposed Class notice are more than adequate, and

10  comply with the Federal Judicial Center's model class action notices. *See*

11  www.fjc.gov; *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-

12  2308-TBR, 2012 U.S. Dist. LEXIS 113641, at *46-47 (W.D. Ky.  Aug. 13, 2012)

13  (approving class notices that "comply with the Federal Judicial Center's

14  illustrative class action notices").  The Class Letter provides Class Members with

15  sufficient information to make an informed and intelligent decision whether to

16  object to the Settlement.  As such, it satisfies the content requirements of Rule

17  23.  *See In re Compact Disc. Minimum Advertised Price Antitrust Litig.*, 216

18  F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and

19  neutrally the claims and parties in the litigation . . . entitled to participate,

20  including the right to exclude themselves from the class."); *see also Skilstaf, Inc.*

21  *v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012) (enforcing judgment and

22  settlement agreement in prior related action against plaintiff did not violate

23  plaintiff's due process rights where plaintiff was a party to the prior suit and was

24  provided full notice of the release and covenant not to sue provisions of the

25  settlement agreement and rejected opt out opportunity).

26  Additionally, the proposed dissemination of the class notice satisfies all

27  due process requirements.  The Settlement provides that an independent

28  Settlement Administrator will provide direct mail notice to the Class after

BLOOD HURST & O'REARDON, LLP

preliminary approval of the Settlement by the Court.  Further, the Settlement Administrator will take steps to update mailing addresses, and will re-mail Class Letters that are returned.  The Class Letter will also be posted on the Settlement Website and be linked from Class Counsel's website.  *See* Settlement Agreement, §§V(A)-(B), VII(A), and Ex. 3 (Claims Protocol and Class Letter Plan).

In sum, the contents and dissemination of the proposed Class Letter constitutes the best notice practicable under the circumstances and fully complies with the requirements of Rule 23.

## VI.   THE PROPOSED SCHEDULE OF EVENTS

The key Settlement-related dates, such as the time to complete dissemination of the Class Letter or to object, are based on when preliminary approval of the Settlement is granted and the Final Approval Hearing date.  The Settlement-related dates calculated in accordance with the provisions of the Settlement are:

| Event | Date |
|---|---|
| Class Letter mailed to Class Members | No later than sixty (60) days before the date first set for the Final Approval Hearing |
| Last day for objections to the Settlement | No later than thirty (30) days before the date first set for the Final Approval Hearing |
| Parties to file briefs in support of final approval and/or an award of attorneys' fees and expenses and in response to objections | No later than forty-five (45) days before the  Final Approval  Hearing |
| Defendant's opposition, if any, to Plaintiffs' motion for an award of attorneys' fees and expenses | No later than twenty-one (21) days before the  Final Approval  Hearing |
| Parties to file supplemental briefs in support of final approval and/or an award of attorneys' fees and expenses and in response to objections. | No later than seven (7) days prior to the Final Approval  Hearing |

MEMORANDUM ISO PRELIMINARY APPROVAL

BLOOD HURST & O'REARDON, LLP

00067424

| First day  Final Approval Hearing can be set | No earlier than 120 days after entry of Preliminary Approval Order |
|---|---|

Accordingly, the Parties request that the Court schedule the Final Approval Hearing 120 days after entry of its order granting preliminary approval, or as soon thereafter as the Court's schedule permits.

## VII.   CONCLUSION

For the reasons set forth above, the Parties respectfully request the Court: (1) grant preliminary approval of the Settlement; (2) approve the proposed Class Letter Plan; and (3) schedule a final approval hearing for the Settlement.

Dated: December 13, 2013

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)


By:        /s/  Timothy G. Blood
          TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

*Attorneys for Plaintiffs and Class Counsel*

HOFFMAN & FORDE
SCHUYLER V.V. HOFFMAN V
   (255632)
DANIEL R. FORDE (248461)
3033 Fifth Avenue, Suite 225
San Diego, CA 92103
Telephone: (619) 546-7880
Facsimile: (619) 546-7881
shoffman@hoffmanforde.com
dforde@hoffmanforde.com

ROBBINS ARROYO LLP
GREGORY E. DEL GAIZO (247319)
600 B Street, Suite 1900
San Diego, CA 92101

BLOOD HURST & O'REARDON, LLP



Telephone: 619-525-3990
Facsimile: 619-525-3991
gdelgaizo@robbinsarroyo.com

*Attorneys for Plaintiffs*

BLOOD HURST & O'REARDON, LLP

MEMORANDUM ISO PRELIMINARY APPROVAL

Case No. 3:11-cv-2828-DMS-BGS

00067424

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on December 13, 2013, I electronically filed the

3 foregoing with the Clerk of the Court using the CM/ECF system which will send

4 notification of such filing to the e-mail addresses denoted on the Electronic Mail

5 Notice List.

6      I certify under penalty of perjury under the laws of the United States of

7 America that the foregoing is true and correct.  Executed December 13, 2013.

8

9          s/  *Timothy G. Blood*
          TIMOTHY G. BLOOD

10         BLOOD HURST & O'REARDON, LLP
11         701 B Street, Suite 1700
          San Diego, CA  92101
12         Telephone:  619/338-1100
          619/338-1101 (fax)
13         tblood@bholaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

00067424