BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
toreardon@bholaw.com

Attorneys for Plaintiffs and Class Counsel

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK DOLFO and SUSAN DOLFO, on behalf of Themselves, All Others Similarly Situated and the General Public,<br><br>            Plaintiffs,<br><br>      v.<br><br>BANK OF AMERICA, N.A. and BAC HOME LOANS SERVING, LP,<br><br>          Defendants. | Case No.: 3:11-cv-2828-DMS-BGS<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      April 25, 2014<br>Time:     1:30 p.m.<br><br>Judge:    Hon. Dana M. Sabraw<br>Crtrm:    13A, 13th Floor<br>Date filed:  December 5, 2011 |

BLOOD HURST & O'REARDON, LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................. 1

II. HISTORY OF THE LITIGATION ...................................................... 3

    A. Pre-Filing Investigation ............................................................... 3

    B. The Complaint and Answer .......................................................... 4

    C. The Class Certification Motion .................................................... 4

    D. Discovery and Related Motion Practice ....................................... 5

    E. Settlement Negotiations ............................................................... 6

III. SETTLEMENT TERMS ....................................................................... 7

    A. The Settlement Class .................................................................... 7

    B. Relief to Class Members .............................................................. 8

        1. Option to Close Escrow ...................................................... 8

        2. Zero Interest Negative Escrow Repayment Options ............... 8

        3. The Settlement Does Not Release Monetary Claims and Instructs Class Members They May Wish to Contact an Attorney to Pursue Monetary Relief for the Conduct Alleged ................................................................ 9

        4. Notice and Administration Costs, Attorneys' Fees and Expenses, and Plaintiffs' Service Awards ............................. 9

    C. The Class Notice Plan ................................................................ 10

IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT ................................................................ 11

    A. The Standards for Final Approval of Class Action Settlements ...... 11

    B. The Proposed Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations ............................. 13

    C. The Strengths of Plaintiffs' Case and Risks Inherent in Continued Litigation and in Securing Certification Favor Final Approval ............................................................................. 14

    D. The Risk, Complexity, Expense, and Duration of the Litigation Favor Final Approval .................................................. 15

    E. The Relief Provided by the Settlement Agreement Favors Final Approval ............................................................................. 17

BLOOD HURST & O'REARDON, LLP

F.    The Settlement Agreement Is Fair to Plaintiffs and Class Members ................................................................ 18

G.    Experience and Views of Counsel Favors Approval ...................... 19

H.    The Reaction of the Class Members Favors Final Approval .......... 21

V.    NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF DUE PROCESS ................................................ 22

VI.   PLAINTIFFS' FEE AND EXPENSE APPLICATION SHOULD BE APPROVED ................................................ 23

A.    Plaintiffs' Counsel's Attorneys' Fee Request is Reasonable .......... 23

      1.    The Hourly Rates Are Reasonable ....................... 26

      2.    The Hours Expended Are Reasonable ................... 29

      3.    The Requested Fees Are Reasonable in Light of the *Kerr* Factors ............................................. 30

B.    Class Counsel's Expenses Are Reasonable and Compensable ....... 33

C.    The Service Awards Are Reasonable ............................. 34

VII.  CONCLUSION ........................................................ 36

BLOOD HURST & O'REARDON, LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beane v. Bank of N.Y. Mellon*,
  No. 07 Civ. 09444 (RMB), 2009 U.S. Dist. LEXIS 27504
  (S.D.N.Y. Mar. 31, 2009) ................................................................. 34

*Blum v. Stenson*,
  465 U.S. 886 (1984) ........................................................................ 30

*Buccellato v. AT&T Operations, Inc.*,
  No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699
  (N.D. Cal. June 30, 2011) ............................................................... 26

*In re Cellphone Termination Fee Cases*,
  186 Cal. App. 4th 1380 (2010) ....................................................... 35

*Chavez v. Netflix*,
  162 Cal. App. 4th 43 (2008) ...................................................... 25, 30

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ....................................... 14, 21

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ......................................................... 22

*City of Oakland v. Oakland Raiders*,
  203 Cal. App. 3d 78 (1988) ........................................................... 25

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..................................................... 3, 12

*Corvello v. Wells Fargo Bank, NA*,
  728 F.3d 878 (9th Cir. 2013) ......................................................... 32

*Dennis v. Kellogg Co.*,
  No. 09-CV-1786-L (WMC), 2013 U.S. Dist. LEXIS 163118
  (S.D. Cal. Nov. 14, 2013) (J. Lorenz) ............................................ 28

*Dolfo v. Bank of America, N.A.*,
  Case No. 11-cv-2828 (S.D. Cal.) ................................................... 4, 5

*Edwards v. Aurora Loan Servs., LLC*,
  791 F. Supp. 2d 144 (D.D.C. 2011) ............................................... 16

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ........................................................................ 23

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ...................................................... 20

*In re Employee Benefit Plans Secs. Litig.*,
   No. 3-92-708, 1993 U.S. Dist. LEXIS 21226
   (D. Minn. June 2, 1993)................................................................... 13

*In re Equity Funding Corp. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977)............................................... 32

*In re Ferrero Litig.*,
   No. 11-cv-00205-H-KSC, 2012 U.S. Dist. LEXIS 94900
   (S.D. Cal. July 9, 2012) ................................................................. 19

*Fitzpatrick v. General Mills, Inc.*,
   No. 10-11064 (11th Cir. 2011)........................................................ 32

*Foos v. Ann, Inc.*,
   No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS 136918
   (S.D. Cal. Sept. 24, 2013) .............................................................. 30

*Galluci v. Boiron, Inc.*,
   No. 11cv2039 IAH (NLS), 2012 U.S. Dist. LEXIS 157039
   (S.D. Cal. Oct. 31, 2012) ............................................................... 21

*Garcia v. Gordon Trucking, Inc.*,
   No. 1:10-cv-0324 AWI SKO, 2012 U.S. Dist. LEXIS 160052
   (E.D. Cal. Oct. 31, 2012) ............................................................... 22

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477
   (N.D. Cal. Apr. 22, 2010)............................................................... 35

*Gemelas v. Dannon*,
   No. CV-08-236 (N.D. Ohio 2010) .................................................. 32

*Glendora Cmty. Redev. Agency v. Demeter*,
   155 Cal. App. 3d 465 (1984).......................................................... 25

*Goodman v. Wells Fargo Bank, N.A.*,
   Case No. B243614, 2014 Cal. App. ................................................. 32

*Graciano v. Robinson Ford Sales, Inc.*,
   144 Cal. App. 4th 140 (2006).........................................................................24

*Graham v. Daimler Chrysler Corp.*,
   34 Cal. 4th 553,583 (2004)............................................................................25

*Hanlon v. Chrysler Corp*,
   150 F.3d 1011 (9th Cir. 1998).......................................................................18

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994).............................................................................33

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011)............................................................24, 27

*Hartless v. Clorox*,
   No. 3:06-CV-02705-CAB (S.D. Cal. 2010)..................................................32

*Hemphill v. S.D. Ass'n of Realtors, Inc.*,
   225 F.R.D. 616 (S.D. Cal. 2004)..................................................................30

*Hensley v. Eckhart*,
   461 U.S. 424 (1983) .....................................................................................24

*Housing Rights Ctr. v. Sterling*,
   No. CV 03-859 DSF (Ex), 2005 U.S. Dist. LEXIS 31872
   (C.D. Cal. Nov. 2, 2005) ..............................................................................28

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................34

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) .........................................................................30

*In re Ins. Brokerage Antitrust Litig.*,
   No. 04-5184 (GEB), 2007 U.S. Dist. LEXIS 40729
   (D.N.J. June 5, 2007)....................................................................................35

*Johansson-Dohrmann v. CBR Sys.*,
   No. 12-cv-1115-MMA (BGS), 2013 U.S. Dist. LEXIS 103863
   (S.D. Cal. July 24, 2013) ..............................................................................30

*Johns v. Bayer Corp.*,
   No. 09cv1935 AJB (DHB), 2013 U.S. Dist. LEXIS 14933
   (S.D. Cal. Feb. 1, 2013)................................................................................23

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*Johnson v. General Mills, Inc.*,
  No. SACV 10-0061 CJC (ANx), 2013 U.S. Dist. LEXIS 90338
  (C.D. Cal. June 17, 2013) ............................................................ 28, 30

*Keith v. Volpe*,
  501 F. Supp. 403 (C.D. Cal. 1980) ................................................. 26

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ...................................................... 24, 30

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ............................................................. 24, 26

*Lealao v. Beneficial California, Inc.*,
  82 Cal. App. 4th 19 (2000) ........................................................ 24, 25

*Lingenfelter v. Astrue*,
  No. SA CV 03-00264-VBK, 2009 U.S. Dist. LEXIS 87685
  (C.D. Cal. Sep. 3, 2009) ................................................................. 28

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
  222 F.3d 1142 (9th Cir. 2000) ......................................................... 30

*Love v. Mail on Sunday*,
  No. CV 05-7798-ABC, 2007 U.S. Dist. LEXIS 97061
  (C.D. Cal. Sept. 7, 2007) ................................................................ 28

*In re M.L. Stern*,
  No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650 (S.D. Cal. April
  13, 2009) ............................................................................... 14, 15

*In re M.L. Stern Overtime Litig.*,
  No. 07cv0118 BTM (JMA), 2009 U.S. Dist. LEXIS 94671
  (S.D. Cal. Oct. 9, 2009) ................................................................. 19

*Manchaca v. Chater*,
  927 F. Supp. 962 (E.D. Tex. 1996) ................................................... 13

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) .......................................................... 21

*Milstein v. Huck*,
  600 F. Supp. 254 (E.D.N.Y 1984) ..................................................... 17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ...................................................................... 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................... 22

*National Rifle Association of Am., Inc. v. City of Chicago*,
   No. 1:08-cv-03697 (N.D. Ill. Dec. 19, 2011) .................................... 29

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...................................................... 3, 12

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................ 33

*Ozga v. U.S. Remodelers, Inc.*,
   No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196
   (N.D. Cal. Aug. 9, 2010) ................................................................ 21

*Pelletz v. Weyerhaeuser Co.*,
   592 F. Supp. 2d 1322 (W.D. Wash. 2009) ........................................ 35

*People Who Care v. Rockford Bd. of Educ.*,
   90 F.3d 1307 (7th Cir. 1996) .......................................................... 27

*POM Wonderful, LLC v. Purely Juice, Inc.*,
   No. CV 07-2633 CAS, 2008 U.S. Dist. LEXIS 110460
   (C.D. Cal. Sept. 22, 2008) ........................................................ 28, 30

*In re Reebok Easytone Litig.*,
   No. 4:10-cv-11977-FDS (D. Mass. 2012) ......................................... 32

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) .............................................. 33

*Rider v. San Diego*,
   11 Cal. App. 4th 1410 (1992) ......................................................... 33

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................... *passim*

*San Bernardino Valley Audubon Soc'y v. San Bernardino*,
   155 Cal. App. 3d 738 (1984) ...................................................... 25, 27

*Schwartz v. Sec'y of Health & Human Servs.*,
   73 F.3d 895 (9th Cir. 1995) ........................................................... 26

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) .......................................................... 24, 25, 33

BLOOD HURST & O'REARDON, LLP

*Shames v. Hertz Corp.*,
   No. 07-cv-2174-MMA(WMc), 2012 U.S. Dist. LEXIS 158577
   (S.D. Cal. Nov. 5, 2012) ................................................................................. 27

*Sheppard v. Cons. Edison Co. of N.Y., Inc.*,
   No. 94-CV-0403 (JG), 2002 U.S. Dist. LEXIS 16314
   (E.D.N.Y. Aug. 1, 2002) ............................................................................... 34

*In re Skechers Toning Shoes Prods. Liab. Litig.*,
   MDL No. 2308 (W.D. Ky. 2013) .................................................................... 32

*Smith v. Wrigley*,
   No. 09-60646-Civ-Cohn/Seltzer (S.D. Fla. 2010) ......................................... 32

*State of California v. Meyer*,
   174 Cal. App. 3d 1061 (1985) ........................................................................ 25

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .......................................................................... 33

*Steiner v. Am. Broad. Co., Inc.*,
   248 Fed. Appx. 780, 2007 U.S. App. LEXIS 21061
   (9th Cir. Aug. 29, 2007) ................................................................................. 25

*SternwestCorp. v. Ash*,
   183 Cal. App. 3d 74 (1986) ............................................................................ 26

*Thayer v. Wells Fargo Bank*,
   92 Cal. App. 4th 819 (2001) ........................................................................... 25

*True v. Am. Honda Motor Co.*,
   749 F. Supp. 2d 1052 (C.D. Cal. 2010) .......................................................... 20

*United States v. Apple, Inc.*,
   Case No. 12-2826 (S.D.N.Y.) .......................................................................... 29

*United States v. McInnes*,
   556 F.2d 436 (9th Cir. 1977) .......................................................................... 14

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) .......................................................................... 27

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) .................................................................... 12, 14

BLOOD HURST & O'REARDON, LLP

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995)................................................ 35, 36

*Vess v. Bank of America, N.A.*,
    No. 10cv0920 AJB (WVG), 2013 U.S. Dist. LEXIS 157427
    (S.D. Cal. Oct. 24, 2013) .......................................................... 19

*In re Vitamin Cases*,
    110 Cal. App. 4th 1041 (2003)................................................ 25

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................ 26

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................ 15

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ......................................... 13

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) .................................... 25, 27, 30

*White v. Experian Info. Solutions, Inc.*,
    803 F. Supp. 2d 1086 (C.D. Cal. 2011) .................................. 20

*Williams v. Costco Wholesale Corp.*,
    No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674
    (S.D. Cal. Mar. 4, 2010) ......................................................... 19

*Williams v. Costco Wholesale Corp.*,
    No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 67731
    (S.D. Cal. July 7, 2010) .......................................................... 21

**Statutes and Rules**

California Business and Professions Code §17200 ............................... 5

California Code of Civil Procedure §1021.5 ....................................... 24

California Civil Code §2954................................................... 30, 31

Federal Rules of Civil Procedure
    Rule 23.................................................................... 22, 23
    Rule 23(a) ....................................................................... 5
    Rule 23(b)(2) .................................................. 1, 4, 5, 7

BLOOD HURST & O'REARDON, LLP

Rule 23(c)(1)(B) ............................................................................... 5

Rule 23(c)(2)(B) ............................................................................. 23

Rule 23(c)(4) ................................................................................... 4

Rule 23(e) .............................................................................. 11, 22

Rule 23(e)(1)(C) ........................................................................... 12

Rule 23(e)(2) ............................................................................ 3, 12

Rule 30(b)(6) ......................................................................... 5, 20

**Other Authorities**

Alba Conte, *Attorney Fee Awards* (2d ed. 1993), §2.06 at 39 ............................. 26

H. Newberg & A. Conte, *Newberg on Class Actions*,
§12.08 (2d ed. 1993).............................................................. 33

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*,
§11.41 (4th ed. 2002)............................................................. 13

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action
Plaintiffs: An Empirical Study*,
53 U.C.L.A. L. Rev. 1303 (2006)........................................... 34

BLOOD HURST & O'REARDON, LLP

1        Plaintiffs Rick Dolfo and Susan Dolfo ("Plaintiffs") submit this

2   memorandum in support of the motion for final approval of class action

3   settlement and Plaintiff's request for an award of attorneys' fees and

4   reimbursement of expenses.  (D.E. Nos. 110-3 (the Settlement Agreement), 112

5   (Preliminary Approval Order)).[1]

6   **I.    INTRODUCTION**

7        Plaintiffs have reached a proposed Settlement of this class action against

8   defendants Bank of America, N.A. and BAC Home Loans Servicing, LP

9   (collectively, "Bank of America" or "Defendant").[2]  On June 3, 2013, the Court

10  issued an order certifying the Class pursuant to Rule 23(b)(2) and for declaratory

11  relief.  (D.E. No. 88.)  Consistent with the issues and the Class certified by this

12  Court, the Settlement meets Plaintiffs' goals through class certification – to

13  provide Class Members with an opportunity to close improperly opened escrow

14  accounts, repay, interest-free, any outstanding escrow account balance, and

15  notify Class Members that they may have claims for monetary harm arising out

16  of Bank of America's practices at issue.  While alerting the Class Members to

17  potential individual damage claims, the Settlement does not negatively impact

18  those individual damage claims in any way.

19       The Settlement was reached only after hard-fought litigation, several early

20  neutral evaluation conferences with the Honorable Bernard G. Skomal, two

21  mediation sessions conducted by mediator Scott S. Markus, Esq. of PMA

22  Dispute Resolution, depositions of Bank of America employees and the named

23  Plaintiffs, the exchange of substantial discovery, and a ruling on Plaintiffs'

24  motion for class certification.  The Settlement meets Plaintiffs' goals through

25  class certification – to provide Class Members with an opportunity to close

26  _____

27  [1]    Unless stated otherwise, all capitalized terms have the same meanings as set forth in the Settlement.

28  [2]    All capitalized terms have the same meaning as set forth in the Settlement Agreement.

BLOOD HURST & O'REARDON, LLP

improperly opened escrow accounts, repay, interest-free, any outstanding escrow account balance, and alert Class Members that they may have individual claims for monetary harm arising out of Bank of America's practices at issue.

Moreover, the award of attorneys' fees and expenses requested by Plaintiffs' Counsel is below the ranges established by the case law.   By agreement of the parties, Bank of America will not oppose Plaintiffs' Counsel's application for an award of attorneys' fees not to exceed $500,000 and for an award of out-of-pocket expenses incurred not to exceed $25,000.   Plaintiffs' Counsel have prosecuted this litigation on a wholly contingent basis, accruing over $633,453.75 in attorneys' fees, plus $24,152.48 in unreimbursed expenses. Thus, and as detailed below, a fee award of $500,000 represents a fractional 0.79 multiplier of Plaintiffs' Counsel's lodestar.   By any measure, awarding Class Counsel's requested Attorneys' Fees and Expenses is well below the accepted range of attorney fee awards in class settlements.

The Settlement represents a solid recovery for the Class – a point confirmed by the fact that to date, no Class Members have objected or raised any issue with the Settlement.   That is, since the Court-approved Class Notice Program commenced – which included direct mailed notice to Class Members and an Internet website specifically created for the Settlement – there have been no objections to the Settlement.[3]   *See* Declaration of Jennifer M. Keough Regarding Notice and Settlement Administration filed contemporaneously herewith ("Keough Decl."), ¶13; *see also* D.E. No. 110-3 at Ex. 3 (Claims Protocol and Class Letter Plan).   One of the important benefits of this (b)(2) Settlement is notifying Class Members that they may have claims to pursue for monetary harm arising out of Bank of America's practices at issue.   In this

---

[3]    The objector figures are current through March 11, 2014.  Pursuant to the Preliminary Approval Order (D.E. No. 112), the deadline objecting to the Settlement is March 21, 2014.  Plaintiff will respond to all objections on or before April 18, 2014, in compliance with the response deadline set forth in the Preliminary Approval Order.

respect, the Settlement has proven valuable as well. Class Counsel has received many calls and inquiries from Class Members who are in the same position as the Plaintiffs because of Bank of America's alleged misconduct, requesting information and advice about their legal options for pressing claims seeking monetary relief. *See* Blood Final Approval Decl., ¶5.[4]

For final review of a class action settlement, "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).[5] "This is especially true in complex class action litigation[.]" *Id.* As demonstrated below, the proposed Settlement is, under all circumstances, "fair, reasonable and adequate," and thus warrants final approval by this Court. *Id.*; *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (same).

For the reasons set forth, the Court should find that the proposed Settlement is "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2) and should be granted final approval. Additionally, the Court should grant approval of Class Counsel's application for an award of $500,000 in attorneys' fees, plus reimbursement of $24,221.90 in out-of-pocket expenses, and service awards to the Plaintiffs in the amounts of $7,500, each.

## II.      HISTORY OF THE LITIGATION

### A.      Pre-Filing Investigation

In October 2011, Plaintiffs' Counsel began investigating potential class action litigation against Bank of America relating to its establishment of impound accounts (also known as escrow accounts) for previously non-impounded residential mortgages in connection with the bank's evaluation of

---

[4]      "Blood Final Approval Decl." refers to the concurrently filed Declaration of Timothy G. Blood in Support of Motion for Final Approval of Class Action Settlement.

[5]      Internal quotes and citation somitted unless otherwise specified.

borrower eligibility for a trial period program modification under HAMP.  *See* Blood Final Approval Decl., ¶25.  This investigation included researching potentially applicable HAMP regulations and supplemental directives, as well as Civil Code provisions relating to home mortgage impound accounts.  Plaintiffs' Counsel also researched and analyzed, through publicly-available sources, the potential uniformity and breadth of Bank of America's conduct, and researched and drafted a motion for a preliminary injunction.

### B.    The Complaint and Answer

On December 5, 2011, Plaintiff's Counsel filed the class action complaint in this Action, entitled *Dolfo v. Bank of America, N.A.*, Case No. 11-cv-2828 (S.D. Cal.).  (D.E. No. 1.)  On behalf of a proposed California-only class, the complaint alleged a breach of contract, violations of California's UCL, the Rosenthal Act, the CCRAA, conversion, and sought declaratory relief.   On February 8, 2012, Bank of America filed its answer to the complaint, in which it expressly denied the allegations and asserted twenty affirmative defenses.  (D.E. No. 6.)

### C.    The Class Certification Motion

On January 11, 2013, after significant discovery, Plaintiffs filed their motion for class certification.  (D.E. No. 48.)  Simultaneous with this filing, and after engaging in discovery, Plaintiffs' Counsel filed a motion for leave to file a first amended complaint to clarify the scope of the proposed Class and seek certification under Rules 23(b)(2) and (c)(4).  (D.E. No. 47.)  The Parties fully briefed Plaintiffs' motion for class certification, and on April 19, 2013, this Court held a hearing on the motion.  (D.E. No. 82.)  Bank of America strenuously argued that Plaintiffs and Class Members were not injured by the opening of an escrow account and advancement of escrow items, that defaults, late fees and credit reports were not the result of the escrow account, and that Plaintiffs'

BLOOD HURST & O'REARDON, LLP

1   proposed a "12-part injunctive remedy" that demonstrated that the Class lacked

2   the cohesion necessary for a Rule 23(b)(2) class.  (D.E. No. 62.)

3        On April 29, 2013, the Court issued an order requesting supplemental

4   briefing on the class certification motion.  (D.E. No. 83.)  Pursuant to the order,

5   Plaintiffs were to clarify whether they were willing to exclude monetary relief

6   from a proposed injunction.  (*Id.* at 1.)  Plaintiffs and Defendant filed their

7   supplemental briefing on May 10, 2013, and May 17, 2013, respectively.  (D.E.

8   Nos. 84-85.)  Plaintiffs reaffirmed the scope of the claims they sought to certify,

9   while Bank of America continued to argue that the Class was comprised of

10  borrowers who were subject to diverse, individual circumstances.  (D.E. No. 85;

11  §IV(A) below.)

12       On June 3, 2013, the Court issued an order certifying the Class pursuant to

13  Rule 23(b)(2) and for declaratory relief.  (D.E. No. 88.)  The certified Class

14  excluded any claims for monetary relief:  "Pursuant to Federal Rules of Civil

15  Procedure 23(a), (b)(2) and (c)(1)(B), the Court certifies the following class on

16  Plaintiffs' claims for violation of California Business and Professions Code §

17  17200 and for declaratory relief only…"  (*Id.* at 11.)

18       **D.   Discovery and Related Motion Practice**

19       Throughout this litigation, Plaintiffs' Counsel engaged in substantial

20  discovery, formal and informal, including propounding and responding to sets of

21  written discovery, meeting and conferring with opposing counsel about

22  discovery responses, compelling further responses to discovery requests,

23  reviewing substantial amounts of documents and ESI produced by Bank of

24  America, and taking Rule 30(b)(6) depositions about all of the issues central to

25  the facts and merits of this litigation.  The details surrounding the Parties'

26  discovery-related activities are detailed in paragraphs 24 and 28-37 of the Blood

27  Final Approval Declaration.  As a result of Plaintiffs' Counsel's efforts, they

28  received and reviewed approximately 50,000 pages of targeted discovery and

BLOOD HURST & O'REARDON, LLP

took the depositions of the key witnesses at Bank of America.  Plaintiffs also responded to substantial discovery from Bank of America by producing volumes of documents and each sitting for full-day depositions.

As a result of the extensive discovery, certification, and settlement efforts, Class Counsel was well-positioned to evaluate the strengths and weaknesses of their case, as well as the ultimate fairness of the proposed Settlement.

### E.    Settlement Negotiations

The Parties engaged in numerous, arm's-length mediation sessions.  At the same time the Parties were engaging in extensive briefing and discovery efforts, they were also engaging in protracted and arms-length settlement negotiations before Judge Skomal and a private mediator.  As detailed in paragraphs 41-43 of the Blood Final Approval Declaration, the Parties held numerous mediation sessions with both Judge Skomal and Scott S. Markus, Esq. of Agreement.com / PMA Dispute Resolution.  These mediation sessions occurred before and after the Court issued its order granting class certification and before and after both sides had completed a significant amount of discovery.  Finally, at the conclusion of the second full-day private mediation session on July 9, 2013, the Parties reached a class settlement and executed a settlement term sheet.  Nonetheless, at the time the class settlement was reached, Plaintiffs' separate individual monetary claims remained unresolved.  Class Counsel did not negotiate those claims until after executing the term sheet that detailed the Class resolution.

On August 19, 2013, the Parties held another in-person settlement conference with Judge Skomal in an attempt to resolve the Plaintiffs' individual monetary claims.  (D.E. No. 102.)  With the assistance of Judge Skomal, the Parties ultimately reach an agreement in principle resolving the Plaintiffs' monetary claims, the terms of which are reflected in the Court's Finding Re: Named Plaintiffs' Potential Recovery.  (D.E. No. 103.)  In essence, the amount

BLOOD HURST & O'REARDON, LLP

1  of money to be paid to Plaintiffs for their individual claims was determined by

2  Judge Skomal based on evidence submitted by the Plaintiffs.

3      Every aspect of this Settlement was heavily negotiated, including the terms

4  of injunctive relief, each aspect of the Settlement Agreement and exhibits, the

5  release, the process for closing escrow accounts, the process for obtaining a no-

6  interest payment plan option to repay outstanding escrow balances, and the Class

7  Member notice and claims protocols.   Although all material terms had been

8  agreed upon in July 2013, over the next several months, the Parties continued to

9  exchange drafts of each of the Settlement's exhibits and to negotiate the precise

10  wording of the Settlement Agreement.   This process was also hard-fought and

11  protracted.

12      Class Counsel have determined that a settlement of the Action on the

13  terms reflected in this Agreement is fair, reasonable, adequate, and in the best

14  interests of Plaintiffs and the Class.  *See* Blood Final Approval Decl., ¶¶2-3.

15  **III.   SETTLEMENT TERMS**

16      The Settlement Agreement (D.E. No. 110-3), contains the complete terms

17  of the Settlement, which are summarized below.

18      **A.    The Settlement Class**

19      Consistent with the Class certified by this Court, the Settlement

20  Agreement defines a settlement class under Rule 23(b)(2):

21      All persons who had a residential mortgage loan secured by
22      property located in the State of California and whose loan was
        serviced by Bank of America, where Bank of America created an
23      impound account up until May 31, 2011, as a result of Bank of
        America's evaluation of eligibility for a loan modification pursuant
24      to the Home Affordable Modification Program, and not because of a
25      circumstances permitted by Civil Code §2954.  Excluded from the
        Class are those who entered a "trial period program" pursuant to the
26      Home Affordable Modification Program and defendants and any of
27      their officers, directors and employees.

28

BLOOD HURST & O'REARDON, LLP

*See* Settlement Agreement, §II(A)(6); *see also* D.E. No. 88 (Class Certification Order) at 11-12.

### B. Relief to Class Members

#### 1. Option to Close Escrow

Under the Settlement, Class Members have the option of closing the escrow account associated with their mortgage loan at issue if it is currently serviced by Bank of America. *See* Settlement Agreement, §IV(A). This is a meaningful benefit because the bank's ordinary procedure is to not close a customer's escrow accounts unless there is a zero balance. *See, e.g.*, D.E. No. 48-1 (Plaintiffs' Memo ISO Class Certification) at 8 (referencing notations from Plaintiffs' loan servicing file attached thereto as Ex. G, at Rows 1572-74).

As prominently noted on the first page of the Class Letter, to elect to close escrow, all Class Members must do is submit the Request Form by fax, mail, or online at the Settlement Website. Settlement Agreement, §§V(A)-(B), and Exhibit 4 at 1. The Request Form was directly mailed to Class Members enclosed with the Class Letter. The Request Forms will also be available at the Settlement Website, and a link to the Request Forms will be posted on Class Counsel's website. *Id.*, §V(B). In addition to the independent Settlement Administrator being available to answer any questions, Bank of America is also training a team of employees to specifically handle this Settlement, including closing escrow accounts, and providing zero interest repayment options (discussed below). *See also* Keough Decl., ¶¶4-12 (discussing compliance with the Class Letter Plan).

#### 2. Zero Interest Negative Escrow Repayment Options

In addition to the option to close their escrow accounts, for those loans Bank of America currently services, Bank of America is providing Class Members a zero-interest repayment option for negative escrow account balances. *See* Settlement Agreement, §IV(B). Thus, the Settlement provides Class

Members not just the option to close escrow accounts even though it carries an outstanding balance, but also affords them the opportunity to pay all outstanding amounts over time, interest-free.

### 3.   The Settlement Does Not Release Monetary Claims and Instructs Class Members They May Wish to Contact an Attorney to Pursue Monetary Relief for the Conduct Alleged

The Settlement does not release monetary claims arising out of the conduct at issue in this lawsuit.  *See* Settlement Agreement, §VIII(B)(1) ("The release does not include any action, claim, demand or cause of action of whatever kind or nature for monetary relief.").   Consistent with the order granting class certification for injunctive and declaratory relief only, the Settlement also provides an important benefit in the form of advising Class Members clearly and prominently in the Class Letter that they may have claims for damages or other monetary relief arising out of Bank of America's conduct at issue, and that to pursue claims they should consult an attorney. *Id.*, Ex. 4 at 2.  Class Members have responded extremely favorably to this Settlement benefit.  Class Counsel have received many calls from Class Members wishing to discuss their legal options to pursue claims for monetary relief arising out of the conduct at issue. *See* Blood Final Approval Decl., ¶5.

### 4.   Notice and Administration Costs, Attorneys' Fees and Expenses, and Plaintiffs' Service Awards

Under the Settlement, all Notice and Claims Administration Expenses, attorneys' fees and expenses, and plaintiff service awards are paid by Bank of America. *See* Settlement Agreement, §§V(E), IX(B), IX(C).  As detailed below, under an agreement reached on March 10, 2014, Bank of America agrees not to oppose Plaintiffs' Counsel's application for attorney's fees in the amount of $500,000 and reimbursement of expenses not to exceed $25,000.  *See* Blood Final Approval Decl., ¶21.  This fee amount is substantially less than the fees

BLOOD HURST & O'REARDON, LLP

1   incurred.  Bank of America also agrees not to oppose any request for Court-

2   awarded service awards of $7,500 each to Plaintiffs Rick Dolfo and Susan Dolfo.

3   *See* Settlement Agreement, §IX(C).

4       **C.**    **The Class Notice Plan**

5       The Parties developed a notice plan with the help of Garden City Group,

6   Inc., a firm that specializes in developing class action notice plans.  *See*

7   Settlement Agreement, §VII(A).

8       The plain English Class Letter and accompanying Request Form was sent

9   by direct mail to Class Members.  To facilitate this direct notice, Bank of

10  America provided the Settlement Administrator with the names and contact

11  information for Class Members.  *Id.*, §VII(A)(1).  On or about February 24,

12  2014, the Class Letter and Request Form was mailed to the last known address

13  (after updating addresses by reference to the National Change of Address

14  Database) of all Class Members.  *Id.*, §VII(A)(2) (the "Initial Mailed Notice").

15  For all Class Letters that are returned as undeliverable, the Settlement

16  Administrator will perform address traces and re-mail Class Letters and Request

17  Form to applicable Class Members.  *Id.*, §VII(A)(3) (the "Notice Re-mailing

18  Process").

19      Additionally, the Settlement Administrator designed and facilitated a

20  website set up for this Settlement (the "Settlement Website").  The Class Letter,

21  Request Form, and other Settlement related documents and deadlines are posted

22  on the Settlement Website.  The address of the Settlement Website,

23  www.BofAEscrowSettlement.com (a web address ideally suited for this Action),

24  appears prominently throughout the Class Letter, and is hyper-linked from Class

25  Counsel's website.  The short and simple online Request Form, which requires

26  checking just one box to close escrow, can be completed from and submitted at

27  the Settlement Website.  *See* Settlement Agreement, Ex. 2.  The Request Form

28

BLOOD HURST & O'REARDON, LLP

00069599

1   can also be returned via mail with postage paid by Bank of America or via fax.

2   *Id.*, §V(B).

3       The Class Letter also provides instructions in Spanish directing Class

4   Members to the Settlement Website for additional information in Spanish. *See*

5   *id.*, Ex. 4 at 2 (states in bold, "*Para información en español, llamen al 1-800-*

6   *xxx-xxx o visite la página web, www.BofAEscrowSettlement.com*").  The

7   Settlement Administrator has established and maintained a 24-hour toll-free

8   telephone line.  Through this toll-free number, which is repeated throughout the

9   Class Letter, English and Spanish speakers are able to speak with live, English

10  and Spanish-speaking operators who have been trained to discuss the Settlement.

11  *Id.*, §§VI(A)(1), VI(B)(1).  The Settlement Website also contains a unique

12  feature permitting Class Members to view the Settlement Website in Spanish

13  through Google Translate. *See* Settlement Agreement, Ex. 3 (Claims Protocol

14  and Class Letter Plan) at ¶3(a).

15      As explained in the Keough Declaration, Garden City Group, the Court-

16  appointed Settlement Administrator, has fully complied with the terms of the

17  Settlement, the Class Letter Plan, and the Preliminary Approval Order. *See*

18  Keough Decl., ¶¶4-12.

19  **IV.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE**
20  **PROPOSED SETTLEMENT**

21      The proposed Settlement is fair, reasonable and adequate and reflects

22  careful consideration by both Parties of the benefits, burdens, and risks

23  associated with continued litigation of this Action.  Accordingly, the Parties

24  respectfully submit that this Court should grant final approval of their Settlement

25  Agreement and order that relief be given to the Class.

26      **A.  The Standards for Final Approval of Class Action Settlements**

27      Pursuant to Rule 23(e), after directing notice to all Class Members in a

28  reasonable manner and prior to granting final approval of a proposed settlement,

BLOOD HURST & O'REARDON, LLP

1  the Court must conduct a fairness hearing and determine whether the settlement's

2  terms are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Officers for*

3  *Justice*, 688 F.2d at 625; *see, e.g., Rodriguez v. West Publishing Corp.*, 563 F.3d

4  948, 965 (9th Cir. 2009) ("In this case, the negotiated amount is fair and

5  reasonable no matter how you slice it.  There is no evidence of fraud,

6  overreaching, or collusion."); *see generally*, *Manual for Complex Litigation*

7  *(Fourth)* §21.62 (2004) ("Rule 23(e)(1)(C) establishes that the settlement must be

8  fair, reasonable, and adequate."); 4 Herbert B. Newberg, *et al.*, *Newberg On*

9  *Class Actions* §11:41.

10      Strong judicial policy favors settlement of class actions.  *Class Plaintiffs*,

11  955 F.2d at 1276.  Indeed, "voluntary conciliation and settlement are the

12  preferred means of dispute resolution."  *Officers for Justice*, 688 F.2d at 625.

13  Class action suits readily lend themselves to compromise because of the

14  difficulties of proof, the uncertainties of the outcome, and the typical length and

15  size of the litigation.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

16  Cir. 1976) ("[T]here is an overriding public interest in settling and quieting

17  litigation. This is particularly true in class action suits ….").

18      Several non-exhaustive factors are universally recognized as guideposts to

19  the "fair, adequate and reasonable" determination: (1) the strength of plaintiffs'

20  case; (2) the risk, expense, complexity, and likely duration of further litigation;

21  (3) the risk of maintaining class action status throughout the trial; (4) the amount

22  achieved or recovered in resolution of the action; (5) the extent of discovery

23  completed, and the stage of the proceedings; (6) the experience and views of

24  counsel; and (7) the reaction of the class members to the proposed settlement.

25  *Class Plaintiffs*, 955 F.2d at 1291; *Officers for Justice*, 688 F.2d at 625.

26  Moreover, the Court should give a presumption of fairness to arm's-length

27  settlements reached by experienced counsel.  *Rodriguez*, 563 F.3d at 965 ("We

28  put a good deal of stock in the product of an arms-length, non-collusive,

BLOOD HURST & O'REARDON, LLP

12

MEMORANDUM ISO FINAL APPROVAL

negotiated resolution[.]").  Each of these factors fully supports approval of the Settlement at hand.

### B.  The Proposed Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations

The Parties' arm's-length settlement negotiations and participation in numerous mediation sessions with Judge Skomal and Scott Markus, Esq. further demonstrates the fairness of the Settlement that was reached, and that the Settlement is not a product of collusion.  *See* Blood Final Approval Decl., ¶¶19-21.  Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval."  *Newberg*, §11.41; *see also In re Employee Benefit Plans Secs. Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226, at *17 (D. Minn. June 2, 1993) ("[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement").

Here, Counsel for Bank of America and Plaintiffs each zealously negotiated on behalf of their clients' best interests.  The Parties engaged in protracted negotiations with the assistance of Judge Skomal and Mr. Markus, an experienced and well-respected mediator with PMA Dispute Resolution in San Diego.  These negotiations occurred before and after significant discovery had occurred, and following the Court's ruling on class certification.  Thus, during these negotiations, Plaintiffs and Class Counsel, who are experienced in prosecuting complex class action claims, had a "clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement.  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985); *see also Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).  Moreover, the fact that the Settlement was negotiated over the course of several mediation sessions, in front of two experienced mediators, is one factor that demonstrates

the Settlement was anything but collusive.  *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-length negotiations, including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a procedurally sound manner."); *In re M.L. Stern*, No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *13 (S.D. Cal. April 13, 2009) (granting preliminary approval and stating that "the settlement was reached with the supervision and assistance of an experienced and well-respected independent mediator").   Further, the nature of the subsequent negotiations between the Parties, the experience of counsel as longstanding class action attorneys, and the fair result reached are illustrative of the arms-length negotiations that led to the Settlement Agreement.

### C.   The Strengths of Plaintiffs' Case and Risks Inherent in Continued Litigation and in Securing Certification Favor Final Approval

Settlements resolve the inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions.  *See Van Bronkhorst*, 529 F.2d at 950; *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977).  This action is not unique in this regard – the Parties disagree about the merits, and there is substantial uncertainty about the ultimate outcome of this Action.

Assuming that litigation was to proceed, the hurdles that Plaintiffs face prior to trial are substantial.  As a preliminary matter, Bank of America filed a motion for clarification or reconsideration of the Court's order granting class certification.  (D.E. No. 90.)  If successful, the motion might have significantly narrowed the scope of the certified litigation.  In its motion, Bank of America requested that the Court clarify its belief that the order granted certification of Plaintiffs' UCL and declaratory relief claims only.  Bank of America also argued that discovery must be limited to conform with its narrow interpretation of the

00069599

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    Court's certification order.  The Parties executed the settlement term sheet before

2    Plaintiffs' deadline to file a response to the motion for clarification.

3        Bank of America was likely to file a motion for decertification or motion

4    for summary judgment because it has always strenuously argued that Plaintiffs'

5    cannot satisfy the standards of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541

6    (2011), and the Class is comprised of borrowers who were subject to diverse,

7    individual circumstances.  (*See, e.g.*, D.E. No. 85 at 2.)  Similarly, Bank of

8    America has also argued that individual defenses predominate and would make a

9    trial unmanageable.  For example, Bank of America argues that it has defenses to

10   the claims of certain Class Members because they executed unique contracts,

11   consented to the creation of escrow accounts, and any negative credit reporting

12   was due to factors unrelated to an escrow account.  (*Id.* at 4.)  According to Bank

13   of America, "[t]o consider the proposed injunction, the Court would have to

14   conduct at least a six-part inquiry [unique] for each class member."  (*Id.*)

15       On the merits, Bank of America contends that HAMP guidelines permitted

16   (or even required) opening escrow accounts, and borrowers all consented to

17   escrow accounts under the circumstances at issue.  For example, during

18   deposition, Bank of America's corporate designee cited the following language

19   from a HAMP supplemental directive: "The borrower agrees to set up an escrow

20   account for taxes and hazard and floor insurance prior to the beginning of the

21   trial period if one does not currently exist."

22       Given these considerations, final approval of the Settlement Agreement is

23   appropriate to avoid the uncertainties of continued litigation.

24   **D.    The Risk, Complexity, Expense, and Duration of the Litigation
         Favor Final Approval**

25

26       In addition to the substantial risks and uncertainty inherent in continued

27   litigation, the Parties face the certainty that further litigation would be expensive,

28   complex, and time consuming.

Here, the proposed Settlement specifically addresses the alleged improper conduct certified for injunctive and declaratory relief by providing Class Members with an opportunity to close unwanted escrow accounts, repay negative escrow balances interest-free over time, and notify them that they may have claims for monetary damages and they should consult an attorney. The proposed Settlement is able to provide these benefits without the risk and delays of continued litigation, trial and appeal. The expense, complexity and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement. Litigating this class action through trial would undoubtedly be time-consuming and expensive. As with most class actions, this Action is complex. For example, this Action involves wading through and interpreting numerous guidelines and directives issued concerning the HAMP program. As one court described the program, "HAMP is a creative, complex, and still evolving program, created in response to a grave economic crisis." *Edwards v. Aurora Loan Servs., LLC*, 791 F. Supp. 2d 144, 155 (D.D.C. 2011). Bank of America is a sophisticated corporation with teams of employees working on interpreting HAMP guidelines and implementing what it believes were consistent policies and procedures. Continued litigation would require a significant number of additional depositions, including of the nine ESI custodians the Parties were able to winnow from a much broader set of potentially relevant employees. Plaintiffs' Counsel was also faced with compelling certain discovery that Bank of America refused to provide. This was particularly true given its narrow interpretation of the class certification order. Question about the requirements for opening escrow accounts in the HAMP evaluation process, and factors leading to negative credit reports were vigorously disputed by the Parties and would require analysis by banking experts for both Parties. For example, Plaintiffs hired an expert to review HAMP regulations and provide expert opinion about banking policies, HAMP requirements, and borrower consent issues. At a minimum, absent

BLOOD HURST & O'REARDON, LLP

settlement, litigation of these issues would likely continue for substantial time through the expert stage, summary judgment and/or a motion for decertification before Plaintiffs or the Class would see any resolution.  That a settlement would eliminate the delay and expenses strongly weighs in favor of approval.  *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y 1984).

By reaching this Settlement, the Parties will avoid protracted litigation and establish a means for prompt resolution of Class Members' claims.  The avenue of relief provided by the Settlement ensures meaningful benefits to Class Members.  Given the alternative of continued, long and complex litigation before this Court, the risks involved in such litigation and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.

### E.    The Relief Provided by the Settlement Agreement Favors Final Approval

The Settlement Agreement provides real relief for the Class.  Plaintiffs alleged that Bank of America improperly and without consent opened and funded escrow accounts for loans owned by Class Members during initial eligibility verification and prior to being accepted into a HAMP trial period program.  (D.E. No. 88 at 2.)  If and when Class Members realized that a portion of their monthly payment was being funneled to pay down an outstanding escrow balance (resulting in a negative outstanding balance), they contacted Bank of America. However, pursuant to its internal guidelines Bank of America refused to close escrow accounts unless and until the outstanding balance was paid in full.  *See* §III(B)(1) above.   Under the Settlement, and even if there is a negative outstanding balance, Bank of America will close the escrow accounts of any eligible Class Member who submits the simple Request Form.  Moreover, Bank of America will offer these Class Members a no-interest option to repay the negative escrow account balance over time.  Finally, Class Members are

BLOOD HURST & O'REARDON, LLP

informed that they may have claims for monetary damages and instructed that they may wish to consult an attorney.

Nevertheless, in evaluating the fairness of the consideration offered in settlement, it is not the role of the court to second-guess the negotiated resolution of the parties. "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

## F.   The Settlement Agreement Is Fair to Plaintiffs and Class Members

The proposed Settlement is fair as to all Class Members in that it provides eligible Class Members with an opportunity to close unwanted escrow accounts, repay balances over time interest-free, and informs them all about potential claims for monetary damages. To exercise their settlement rights and close their escrow accounts, all eligible Class Members must do is check a single box on the short Request Form, and submit it online or through the mail using the postage pre-paid means provided in the packet that will be directly mailed. *See* Settlement Agreement, §§V(A)-(B), and Ex.3 (Claims Protocol and Class Letter Plan) at ¶2(b). Further, Plaintiffs Rick Dolfo and Susan Dolfo do not receive any unduly preferential treatment under the Settlement. With the exception of

modest $7,500 service awards to account for their willingness to step forward and represent other consumers, and to compensate them for their time and effort devoted to prosecuting the common claims, Plaintiffs are treated the same as every other Class Member.  *See generally*, concurrently filed Declarations of Rick and Susan Dolfo.  For example, Plaintiffs each responded to written discovery, produced hundreds of pages of documents, sat for full-day depositions, attended mediation sessions before Judge Skomal and Mr. Markus, participated in frequent in-person and telephonic conferences with Plaintiffs' Counsel, and devoted time and energy to gathering substantial information from third-parties in response to requests from counsel for the purpose of furthering the litigation.  *See* Blood Final Approval Decl., ¶6; Susan Dolfo Decl., ¶¶2-5; Rick Dolfo Decl., ¶¶2-5.  Such service awards are "fairly typical in class action cases."  *Rodriguez,* 563 F.3d at 958; *see also Vess v. Bank of America, N.A.*, No. 10cv0920 AJB (WVG), 2013 U.S. Dist. LEXIS 157427, at *4 (S.D. Cal. Oct. 24, 2013) (granting final approval and awarding plaintiff an incentive award of $7,500 as fair and reasonable); *In re Ferrero Litig.*, No. 11-cv-00205-H-KSC, 2012 U.S. Dist. LEXIS 94900, at *11 (S.D. Cal. July 9, 2012) (approving incentive awards of $10,000 and $7,500); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674, at *10 (S.D. Cal. Mar. 4, 2010) ("Although [plaintiff] seeks a $5,000 service fee for himself which is not available to other class members, the fee appears to be reasonable in light of [plaintiff's] efforts on behalf of the class members."); *In re M.L. Stern Overtime Litig.*, No. 07cv0118 BTM (JMA), 2009 U.S. Dist. LEXIS 94671, at *11 (S.D. Cal. Oct. 9, 2009) (granting final approval and awarding class representative class enhancement awards of $15,000 per class representative).

### G.    Experience and Views of Counsel Favors Approval

Courts recognize that the opinions of experienced counsel supporting a settlement, especially after vigorous arm's-length negotiations, are entitled to

considerable weight.  *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1099 (C.D. Cal. 2011) ("The experience and views of counsel further support a finding that the Settlement is fair."); *True v. Am. Honda Motor Co*., 749 F. Supp. 2d 1052, 1079 (C.D. Cal. 2010) (holding that class counsel's views that settlement was reasonable weighed in favor of settlement); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) *aff'd,* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").  In this litigation too, the experience and views of Class Counsel weigh in favor of final approval.

Class Counsel are experienced class action litigators with a history of success in similar litigation.  *See* Blood Final Approval Decl., Ex. A (BHO Firm Resume).   Through substantial discovery efforts, including Rule 30(b)(6) depositions of Bank of America, and during the course of hard-fought litigation including a ruling on Plaintiffs' motion for class certification, Class Counsel garnered a large amount of factual support for the underlying allegations and tested the Action from a legal analysis perspective.  By virtue of this discovery and the Court's ruling on important legal issues, Class Counsel were also able to thoroughly evaluate the respective strengths and weaknesses of those positions. Armed with this information, Class Counsel worked diligently to secure the best possible result for the Class through vigorous, arm's length negotiations and the numerous settlement conferences.  Class Counsel's views and recommendations concerning the Settlement are the product of thorough analysis and consideration of the issues and risks of continued litigation.  Class Counsel believe that the results achieved by the Settlement are eminently fair, adequate and reasonable. *See* Blood Final Approval Decl., ¶¶2-3.

///

///

Case No. 3:11-cv-2828-DMS-BGS
MEMORANDUM ISO FINAL APPROVAL

00069599

BLOOD HURST & O'REARDON, LLP

### H.     The Reaction of the Class Members Favors Final Approval

Courts have likewise recognized that a favorable reaction by class members to the proposed settlement strongly supports final approval. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d at 852 ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."). Class Members must be allowed the opportunity to review and object to both the preliminary notice of settlement and plaintiffs application for attorneys' fees prior to final approval. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010). If, after having a full opportunity to object to all aspects of a settlement, no class members objected to the settlement, then that is an important factor in evaluating the fairness of the settlement. *See, e.g., Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196, at *5 (N.D. Cal. Aug. 9, 2010) (in granting final approval of a settlement class, court considered that the "overall reaction to the Settlement has been positive," there were no objections to the Settlement and "[n]o Class Member appeared at the final approval hearing to object"); *Williams v. Costco Wholesale Corp.,* No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 67731, at *13 (S.D. Cal. July 7, 2010) (holding that "reaction of the class members weighs in favor of granting final approval" where "not one class member has filed an objection or a request for exclusion") (citing *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.")).

Here, the reaction of Class Members is uniformly positive. As of March 11, 2014, neither Class Counsel nor the Settlement Administrator has received any objections to the settlement. *See* Blood Final Approval Decl., ¶4; Keough Decl., ¶13. This can certainly be viewed as a positive reaction. *See, e.g., Galluci v. Boiron, Inc.*, No. 11cv2039 IAH (NLS), 2012 U.S. Dist. LEXIS 157039, at

1   *19 (S.D. Cal. Oct. 31, 2012) ("The response of the Class to this action, the

2   certification of a class, and the Settlement...strongly favors final approval of the

3   Settlement.  Out of the estimated millions who received Notice [] only two class

4   members submitted valid requests for exclusion.  Moreover, only three

5   Objections were filed[.]"); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-0324

6   AWI SKO, 2012 U.S. Dist. LEXIS 160052, at *14, 17, 19 (E.D. Cal. Oct. 31,

7   2012) (no objections and less than 1% of the class electing to opt out weighed in

8   favor of final approval and the adequacy of the amount offered in settlement);

9   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal.

10  2004) ("the absence of a large number of objections to a proposed class action

11  settlement raises a strong presumption that the terms of a proposed class

12  settlement action are favorable to the class members"); *Churchill Village, LLC v.*

13  *Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of a class

14  action settlement where forty-five objections were received out of 90,000

15  notices).  As a testament to the value of the Settlement, which provided Class

16  Members notice of potential claims for monetary harm, Class Counsel has

17  received numerous calls and emails from Class Members wishing to take

18  advantage of the Settlement by pursuing legal remedies to recovery monetary

19  losses. *See* Blood Final Approval Decl., ¶5.

20      In sum, the Settlement is the product of mediated negotiations among the

21  parties, informed of the relative strengths and weaknesses of their claims and

22  defenses.  Thus, the Settlement is fair, adequate and reasonable, and warrants

23  final approval under Rule 23(e).

24  **V.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF**

25  **DUE PROCESS**

26      The notice provided to the Settlement Class was adequate and satisfies

27  Rule 23 and all other due process requirements.  Rule 23 requires that "the court .

28  . . direct to class members the best notice that is practicable under the

BLOOD HURST & O'REARDON, LLP

circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  While actual notice is not required, the notice must be reasonably calculated to apprise the Settlement Class of the pendency of the settlement and afford them an opportunity to present their objections or opt-out.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950).

The notice plan provided under the Settlement was reasonably calculated to apprise Class Members of the pendency of the Action and their right to object to the Settlement.  This Court previously approved the form and manner of notice, which was modeled after and consistent with "The Federal Judicial Center's 'Illustrative' Forms of Class Action Notices."  *See* http://www.fjc.gov/(last visited March 22, 2013); *see also* Fed. R. Civ. P. 23 Advisory Committee Notes (2003) ("The Federal Judicial Center has created illustrative clear-notice forms that provide a helpful starting point for actions similar to those described in the forms."); *Johns v. Bayer Corp.*, No. 09cv1935 AJB (DHB), 2013 U.S. Dist. LEXIS 14933, at *6 (S.D. Cal. Feb. 1, 2013) ("the form and information contained within the notice is based on and consistent with the Federal Judicial Center's notices and satisfy the requirements of Rule 23 and due process").  As detailed in the concurrently filed Keough Declaration, the Class Letter Plan was executed as previously detailed.  *See* Keough Decl., ¶¶4-12.

## VI.   PLAINTIFFS' FEE AND EXPENSE APPLICATION SHOULD BE APPROVED

### A.   Plaintiffs' Counsel's Attorneys' Fee Request is Reasonable

Plaintiffs seek an award of attorneys' fees of $500,000, representing a fractional multiplier of 0.79 to Plaintiffs' Counsel's lodestar of $633,453.75.  As demonstrated, Plaintiffs' Counsel's lodestar is the product of efficient, non-duplicative litigation efforts against a Defendant who battled every step of the way: throughout discovery and depositions, a successful motion for class

certification, and numerous mediation sessions. Further, Class Counsel achieved this Settlement without trial and further litigation, which would only have increased the costs ultimately borne by the Class. Counsel should be justly rewarded for obtaining relief in a timely and efficient manner. The requested fees should be approved as fair and reasonable.

"Under California law, a primary method for determining the amount of reasonable attorneys' fees is the lodestar method. *Hartless v. Clorox Co.*, 273 F.R.D. 630, 642-43 (S.D. Cal. 2011) (citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 n.13 (2009) (awarding fees in national class action settlement under C.C.P. §1021.5)); *see also Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 154 (2006) (same); *Serrano v. Priest*, 20 Cal. 3d 25, 48 n.23 (1977) ("The starting point of every fee award…must be a calculation of the attorney's services in terms of the time he has expended on the case.").

Under the two-step lodestar/multiplier method, trial courts first calculate the lodestar, consisting of "***all*** the hours ***reasonably spent***, including those relating solely to the fee," times reasonable hourly rates. *Ketchum v. Moses,* 24 Cal. 4th 1122, 1133 (2001) (emphasis in original); *see also Hensley v. Eckhart*, 461 U.S. 424, 433 (1983). That figure is then augmented or multiplied to reflect additional factors that must be considered in determining a reasonable attorney fee award. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Ketchum*, 24 Cal. 4th at 1138 ("the unadorned lodestar reflects the general local hourly rate for a ***fee-bearing*** case; it does ***not*** include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider") (emphasis in original). When determining the multiplier, trial courts should consider all factors relevant to a given case. *Lealao v. Beneficial California, Inc.,* 82 Cal. App. 4th 19, 40 (2000). The purpose of using the lodestar/multiplier method is to mirror the legal marketplace: counsel will not handle cases on straight hourly fees that are payable only if they win, so an

enhancement helps determine a fee that is commensurate with what attorneys could expect to be compensated for similar service in these circumstances. *San Bernardino Valley Audubon Soc'y v. San Bernardino*, 155 Cal. App. 3d 738, 755 (1984) (award must be large enough "to entice competent counsel to undertake difficult public interest cases"); *Lealao,* 82 Cal. App. 4th at 50 (adjusted lodestar should not be significantly different from the percentage fee freely negotiated in comparable litigation). In determining the multiplier, courts have considered a range of relevant factors. *Lealao*, 82 Cal. App. 4th at 40. The factors California courts have looked to include:

- the benefits obtained or the results achieved (*City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 80 (1988); *Lealao,* 82 Cal. App. 4th at 41; *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 838 (2001));

- the novelty and difficulty of the questions involved and the skill displayed in presenting the issues (*Serrano*, 20 Cal. 3d at 49);

- the contingencies involved in prosecuting the action and obtaining fees (*id.; Graham v. Daimler Chrysler Corp.,* 34 Cal. 4th 553,583 (2004));

- the delay in receiving fees (*Graham,* 34 Cal. 4th at 583; *City of Oakland*, 203 Cal. App. at 85);

- the promptness of resolution (*Lealao,* 82 Cal. App. 4th at 52; *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1058-59 (2003));

- the multiplier will result in a reasonable percentage of the value of the settlement (*Chavez v. Netflix*, 162 Cal. App. 4th 43, 63 (2008); and

- the "public service element ... and motivation to represent consumers and enforce laws." *State of California v. Meyer*, 174 Cal. App. 3d 1061, 1073 (1985); *Thayer*, 92 Cal. App. 4th at 839 (meager fee awards will discourage able counsel from engaging in public interest litigation, which should be encouraged).

"Multipliers can range from 2 to 4, or even higher." *Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 255 (2001). The court in *Glendora Cmty. Redev. Agency v. Demeter*, 155 Cal. App. 3d 465, 479 (1984), approved a multiplier of 12. *See also Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 2007 U.S. App. LEXIS 21061, at *8 (9th Cir. Aug. 29, 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed");

*SternwestCorp. v. Ash*, 183 Cal. App. 3d 74, 76 (1986) (case remanded with directions "to enhance the lodestar award by such factor (two, three, four or otherwise) that the court, in its discretion shall deem proper"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (multiplier of 3.65); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699, at *4-5 (N.D. Cal. June 30, 2011) (collecting cases and approving multiplier of 4.3). In cases where, as here, "a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multiples of 5 or 10 times the lodestar." Alba Conte, *Attorney Fee Awards* (2d ed. 1993), §2.06 at 39.

In this case, the lodestar of Plaintiffs' Counsel is $633,453.75 based on 1,344.8 hours of work as of March 10, 2014. *See* Blood Final Approval Decl., ¶11; Forde Final Approval Decl., ¶5; Seely Final Approval Decl., ¶8. Accordingly, the requested $500,000 fee award represents a fractional 0.79 multiplier. Considering the results achieved with such a relatively minimal lodestar, Plaintiffs' Counsel could be easily entitled to a positive multiplier of two to four in this Action. In light of the exceptional results obtained, the efficiency with which the case was litigated, the risk, difficulty and the public service rendered by this action and the future work on the final approval reply papers and hearing, settlement, and potential appeals still to be performed, the requested fee is fair and reasonable.

### 1.   The Hourly Rates Are Reasonable

Plaintiffs' Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation and ability for similar litigation. *Ketchum*, 24 Cal. 4th at 1133. Typically, the court looks to prevailing market rates in the community in which the court sits. *Schwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). Payment at full market rates is essential to

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

fulfill the goal of enticing well-qualified counsel to undertake difficult consumer interest litigation, such as this. *San Bernardino*, 155 Cal. App. 3d at 755. The background and experience of Plaintiffs' Counsel are set forth in their firm resumes and concurrently filed declarations. Class Counsel have excellent reputations as class action litigators, with specialized experience in false advertising and consumer class action law. *See* Blood Final Approval Decl., Ex. A (BHO Firm Resume). Hoffman & Forde's practice focuses on obtaining loan and mortgage modifications for individuals and real estate law. *See* Forde Decl., ¶¶2, 7-8. Likewise, Plaintiffs' Counsel from Robbins Arroyo, LLP specialize in class action litigation. *See* Seely Decl., Ex. A (Robbins Arroyo Firm Resume). The hourly rates of Plaintiffs' Counsel are well within the range of rates billed by comparable attorneys in this market and are the standard rates they charge to all of their clients.[6]

Moreover, Plaintiffs' Counsel's lodestar is calculated using rates that have been accepted in numerous other class action cases. *See*, *e.g.*, *Hartless*, 273 F.R.D. at 644 (J. Bencivengo) (approving hourly rates of Blood Hurst & O'Reardon, LLP, stating that "based on the Court's familiarity with the rates charged by other firms in the San Diego area, the Court finds the rates charged by the attorneys and paralegals in this action reasonable"); *Shames v. Hertz Corp.*, No. 07-cv-2174-MMA(WMc), 2012 U.S. Dist. LEXIS 158577, at *61 (S.D. Cal. Nov. 5, 2012) (approving hourly rates based on *Hartless*, and stating that "The *National Law Journal* data reveals that rates at six national defense firms with San Diego offices averaged between $550 and $747 per hour for

---

[6]     An attorney's actual billing rate for similar work is presumptively appropriate. *See Wershba*, 91 Cal. App. 4th at 254-55; *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

partners and $346 and $508 per hour for associates."); *Dennis v. Kellogg Co.*, No. 09-CV-1786-L (WMC), 2013 U.S. Dist. LEXIS 163118, at *22-23 (S.D. Cal. Nov. 14, 2013) (J. Lorenz) (approving hourly rates of Blood Hurst & O'Reardon, LLP as "fall[ing] within typical rates for attorneys of comparable experience"); *Johnson v. General Mills, Inc.*, No. SACV 10-0061 CJC (ANx), 2013 U.S. Dist. LEXIS 90338, at *19-21 and n.3 (C.D. Cal. June 17, 2013) (approving hourly rates and time spent by Blood Hurst & O'Reardon, LLP, stating "[t]he Court has considered class counsel's rates and finds they are reasonable because of the experience of the attorneys and prevailing market rates") (citing Blood Hurst & O'Reardon, LLP's firm resume); *POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07-2633 CAS (JWJx), 2008 U.S. Dist. LEXIS 110460, at *11-13 (C.D. Cal. Sept. 22, 2008) (partner rates of $750 to $450 and associate rates of $425 to $275 were reasonable).

Plaintiffs' Counsel's rates also compare very favorably with rates approved by other trial courts in class action litigation.[7] *See also* Blood Final Approval Decl., Ex. B (the 2013 National Law Journal Billing Survey provides the following for Los Angeles-based firms: Allen Matkins Leck Gamble Mallory & Natsis ($680-$525 partner rates); Buchalter Nemer ($695-$475 partner rates, $375-$350 associate rates); Irell & Manella ($975-$800 partner rates, $750-$395 associate rates); Manatt, Phelps & Phillips ($795-$640 partner rates); O'Melveny & Myers ($950-$615 partner rates); Sheppard, Mullin, Richter & Hampton ($875-$490 partner rates, $535-$275 associate rates)). In fact, the rates of Class Counsel are nearly identical to Goodwin Procter's rates according to a

---

[7] *Lingenfelter v. Astrue*, No. SA CV 03-00264-VBK, 2009 U.S. Dist. LEXIS 87685, at *11 (C.D. Cal. Sep. 3, 2009) ($600 is "reasonable"); *Love v. Mail on Sunday*, No. CV 05-7798-ABC (PJWX), 2007 U.S. Dist. LEXIS 97061, at *25 (C.D. Cal. Sept. 7, 2007) (approving partner rates of $540-$690 and associate rates of $305-$485); *Housing Rights Ctr. v. Sterling*, No. CV 03-859 DSF (Ex), 2005 U.S. Dist. LEXIS 31872, at *10 (C.D. Cal. Nov. 2, 2005) (J. Fischer) (noting hourly rates may run up to $1,000 per hour in Los Angeles, with $125 to $650 routine in California).

BLOOD HURST & O'REARDON, LLP

declaration submitted by one of its partners attesting to "Goodwin Procter's usual billing rates." *See* D.E. No. 260-2 in *Huthnance v. DC*, No. 1:06-cv-01871-RCL (D.D.C. Sept. 8, 2011) at ¶14 (declaration of Goodwin Procter partner John Moustakis submitted in connection with a fee application in a wrongful arrest case lists the following hourly rates: John Moustakas (Partner, JD 1989) – $675/hour; Jeffrey Skinner (Associate, JD 2005) –  $520/hour; Andrew Hudson (Associate, JD 2008) – $415/hour)); *see also* D.E. No. 100 in *National Rifle Association of Am., Inc. v. City of Chicago*, No. 1:08-cv-03697 (N.D. Ill. Dec. 19, 2011) (listing 2011 hourly rates for Goodwin Procter partners Stephen D. Poss ($850) and Kevin P. Martin ($675), counsel John Rich ($615), and associates Joshua Lipshutz ($505) and Frank W. Washko ($475)).  The Southern District of New York also recently approved the $1,100 hourly rate charged by Goodwin Procter partner Michael Bromwich in *United States v. Apple, Inc.*, Case No. 12-2826 (S.D.N.Y.).  *See*  http://www.reuters.com/article/2014/01/14/us-apple-antitrust-idUSBREA0C1HY20140114 (last visited March 4, 2014). Further, Plaintiffs' Counsel have submitted sworn declarations attesting to their hourly rates and total hours devoted to the case, their experience, and describing their efforts to prosecute this case.

## 2.    The Hours Expended Are Reasonable

The number of hours spent by Plaintiffs' Counsel is reasonable.  The 1,344.8 total hours spent by Plaintiffs' Counsel is reasonable given the efforts to obtain and analyze evidence, litigate the Action through a successful motion for class certification, and ultimately obtain this resolution.  *See, e.g.,* Blood Final Approval Decl., ¶¶12-16, 23-24; Forde Decl., ¶3; Seely Decl., ¶¶2-6.  As detailed in their declarations, Plaintiffs' Counsel performed unique, non-duplicative tasks that were each reasonable and necessarily performed in this Action.   Class Counsel then spent a significant amount of time negotiating the Settlement in principle and then finalizing the actual terms of the Settlement with a defendant

that scrutinized and bargained virtually every provision of the Settlement Agreement.[8]   Blood Final Approval Decl., ¶¶41-43.   Considering the heavily contested nature of this Action through several phases of litigation, Plaintiffs' Counsel's 1,344.8 total hours is, if anything, low.

### 3.   The Requested Fees Are Reasonable in Light of the *Kerr* Factors

In considering the reasonableness of attorneys' fees under a lodestar calculation, courts consider the novelty and complexity of the litigation, skill and experience of counsel and the results obtained.   *Kerr,* 526 F.2d at 70*; Blum v. Stenson*, 465 U.S. 886, 898-900 (1984); *Foos v. Ann, Inc.,* No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS 136918, at *11-12 (S.D. Cal. Sept. 24, 2013) ("After computing the 'lodestar,' the district court may then adjust the figure upward or downward taking into consideration [*Kerr's*] twelve 'reasonableness' factors").

As demonstrated in the detailed complaint, mediation statements, and the Parties' motion for class certification briefing, this litigation concerned myriad complex legal and factual issues.   As an initial matter, this Action is novel.   In essence, this Action is about Defendants' violation of Civil Code §2954.   Section 2954 was enacted in 1961 and prohibits the opening of an escrow account except

---

[8]   Counsel need only submit summaries of their hours incurred; submission of billing records is not required. *Wershba*, 91 Cal. App. 4th at 254-55; *Chavez*, 162 Cal. App. 4th at 64 ("timesheets are not required of class counsel to support fee awards in class action cases"); *Lobatz v. U.S. W. Cellular of Cal., Inc.,* 222 F.3d 1142, 1148-49 (9th Cir. 2000) (the court may rely on summaries of the total number of hours spent by counsel); *Johnson*, 2013 U.S. Dist. LEXIS 90338, at n.3 (citing *Lobatz* and approving class counsel's hours without detailed billing records, stating "the hours spent by counsel do not appear to be unreasonable in light of the extensive litigation…and other time-intensive tasks"); *POM Wonderful*, 2008 U.S. Dist. LEXIS 110460, at *10-11; *Hemphill v. S.D. Ass'n of Realtors, Inc*., 225 F.R.D. 616, 623-24 (S.D. Cal. 2004) (declining review of detailed time records where no evidence of collusion); *Johansson-Dohrmann v. CBR Sys.*, No. 12-cv-1115-MMA (BGS), 2013 U.S. Dist. LEXIS 103863, at *30 (S.D. Cal. July 24, 2013) ("Although counsel has not provided the Court with detailed time sheets, such detailed time sheets are not necessary"); s*ee also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) (finding district court's reliance on time summaries of counsel proper).

BLOOD HURST & O'REARDON, LLP

under specific circumstances. Plaintiffs' Counsel is not aware of any class action ever brought on the basis of violations of Civil Code §2954. Additionally, as stated above, Plaintiffs' Counsel's novel theory of class wide conduct in violation of section 2954 is intertwined with Defendants' practices relating to the also complex HAMP modification program and its supplemental directives. *See* §IV.D above. These complex legal and factual issues manifested themselves throughout the litigation. For example, Class Counsel was effectively forced to move for certification of an injunctive and declaratory-relief only Class. In opposition to class certification, Defendants strenuously argued that the complexity of Plaintiffs' proposed multi-pronged injunctive relief rendered this case unmanageable as a class action, and further, that excluding damages constituted impermissible claim splitting. The Court held oral argument and thereafter requested supplemental briefing before issuing its opinion granting class certification. Nevertheless, Defendants still filed a motion for clarification or reconsideration of the Court's order granting class certification. Absent Plaintiffs' Counsel's pursuit of novel theories this case would never have been filed as a class action, and never would have achieved class certification and ultimately settlement.

In addition, as demonstrated in Class Counsel's Firm Resume, Class Counsel are experienced and skilled class action attorneys specifically in consumer litigation. Prosecuting nationwide consumer class actions such as this one requires counsel with experience in class action litigation, and state consumer protection laws. Here, Class Counsel have extensive experience in these areas. For example, Class Counsel is currently pursuing a number of class action lawsuits against major banks relating to their HAMP mortgage modification practices. In the process, Class Counsel briefed, argued, and obtained complete lower court reversals in separate lawsuits before the Ninth Circuit Court of Appeals and California's Second District Court of Appeals. *See*

BLOOD HURST & O'REARDON, LLP

*Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013); *Goodman v. Wells Fargo Bank, N.A.*, Case No. B243614, 2014 Cal. App. Unpub. LEXIS 789 (Cal. App. 2d Dist. Jan. 30, 2014).  Since the early 1990's, the practice of Mr. Blood, lead attorney for Plaintiffs, has focused on plaintiffs' class actions where he has represented millions of retail consumers, holders of life, automobile and homeowner insurance policies, mortgagors, credit card customers, homeowners and victims of race discrimination.  Mr. Blood has testified before the California State Assembly and State Senate Judiciary Committees, as well as the Assembly and Senate Committees on Banking, Finance & Insurance.  He has worked at both the state and federal level with lawmakers and government agencies to shape legislation to protect consumer rights, and is a frequent continuing legal education speaker on topics which include complex litigation, class action procedure, financial fraud litigation, insurance litigation and consumer fraud.  *See* Blood Preliminary Approval Decl., Ex. A (BHO Firm Resume) (listing recent false advertising cases including *Fitzpatrick v. General Mills, Inc.*, No. 10-11064 (11th Cir. 2011); *In re Skechers Toning Shoes Prods. Liab. Litig.*, MDL No. 2308 (W.D. Ky. 2013); *In re Reebok Easytone Litig.*, No. 4:10-cv-11977-FDS (D. Mass. 2012); *Johnson v. General Mills, Inc.*, No. 8:1-cv-61-CJC (C.D. Cal. 2013); *Gemelas v. Dannon*, No. CV-08-236 (N.D. Ohio 2010); *Smith v. Wrigley*, No. 09-60646-Civ-Cohn/Seltzer (S.D. Fla. 2010); and *Hartless v. Clorox*, No. 3:06-CV-02705-CAB (S.D. Cal. 2010)).  As demonstrated in their declarations, Plaintiffs' Counsel from Robbins Arroyo and Hoffman & Forde are also experienced litigators with specialized backgrounds that materially benefitted Plaintiffs and the Class.

The skill and competence of opposing counsel should be considered and cannot be doubted.  *See*, *e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (noting that plaintiff's counsel faced "established and skillful defense lawyers").  Bank of America was represented by

BLOOD HURST & O'REARDON, LLP

a team of experienced attorneys from the Washington, D.C. and San Diego offices of Goodwin Procter, a firm skilled in class action defense. The Goodwin Procter team was headed by David Permut, a partner in the firm's litigation department who specializes in civil litigation, with an emphasis on the defense of financial institutions in consumer financial services class actions.

Furthermore, in light of the risks, uncertain outcome and the scope of the certified Class, the results obtained for the Class are exemplary. Therefore, an award of $500,000, leaving aside the expenses incurred to date, is reasonable and should be approved.

### B.    Class Counsel's Expenses Are Reasonable and Compensable

Class Counsel also request reimbursement for the reasonable and necessary expenses advanced by Plaintiffs' Counsel to prosecute this litigation since its inception in 2011. Both the Ninth Circuit and California state courts allow recovery of pre-settlement litigation costs in the context of class action settlements. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *Serrano*, 20 Cal. 3d at 35; *Rider v. San Diego*, 11 Cal. App. 4th 1410, 1423 n.6 (1992); *see also* H. Newberg & A. Conte, *Newberg on Class Actions*, §12.08, at 50-51 (2d ed. 1993); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund."). "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Plaintiffs' Counsel have submitted declarations attesting to the expenses incurred in this Action – in the aggregate, a moderate $24,152.48 was invested since 2011 on this litigation. *See* Blood Final Approval Decl., ¶18; Forde Decl., ¶9; Seely Decl., ¶10. The amount requested is less than an award of $25,000,

BLOOD HURST & O'REARDON, LLP

which Bank of America agreed not to oppose.  *See* Blood Final Approval Decl.,

¶21.  Class Counsel, and as detailed in their declarations, Plaintiffs' Counsel,

incurred these costs for mediation fees, expert fees, deposition expenses, travel,

computer research, photocopies, postage, and telephone charges.  All of these

expenses were reasonably and necessarily incurred, and are of the sort that would

typically be billed to paying clients in the marketplace.  *See In re Immune*

*Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding

as reasonable and necessary, reimbursement for "1) meals, hotels, and

transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5)

messenger and overnight delivery; 6) online legal research; 7) class action

notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *Beane*

*v. Bank of N.Y. Mellon*, No. 07 Civ. 09444 (RMB), 2009 U.S. Dist. LEXIS

27504, at *25-26 (S.D.N.Y. Mar. 31, 2009) (awarding as "properly chargeable to

the Settlement Fund" because they "are the type for which the paying, arms'

length market reimburses attorneys" reimbursement for court fees, photocopying

and reproduction, deposition transcripts, postage and messenger services,

transportation and lodging, telephone bills, and expert and electronic litigation

database support).

### C.    The Service Awards Are Reasonable

Service awards "are fairly typical in class action cases."  *Rodriguez*, 563

F.3d at 958; Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to*

*Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303, 1303

(2006) (28% of class actions include incentive awards to class representatives).

Such awards "serve an important function in promoting class action settlements."

*Sheppard v. Cons. Edison Co. of N.Y., Inc*., No. 94-CV-0403 (JG), 2002 U.S.

Dist. LEXIS 16314, at *16 (E.D.N.Y. Aug. 1, 2002).  The Ninth Circuit has

recognized that service awards "are intended to compensate class representatives

for work done on behalf of the class, to make up for financial or reputational risk

undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.  Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation.  *See Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, Class Counsel respectfully request that the Court approve a modest service award of $7,500 for the Plaintiffs, each, in recognition of their contributions toward the successful prosecution of this case.  As detailed in their attached declarations, Plaintiffs Rick Dolfo and Susan Dolfo have spent a substantial amount of time in connection with the litigation of the Class claims, attended settlement mediation, reviewed relevant pleadings, provided written discovery responses, produced hundreds of pages of documents, each sat for their full-day depositions, and kept in constant communication with their counsel consistently throughout the litigation via periodic telephone conferences, in-person meetings, and email.  *See* Blood Final Approval Decl., ¶6; Rick Dolfo Decl., ¶¶2-5; Susan Dolfo Decl., ¶¶2-5.  Bank of America does not oppose the payment of the $7,500 service awards.  *See* Settlement Agreement, §IX.C.

The requested service awards fall squarely in line with amounts awarded in comparable cases.  *See*, *e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *47 and n.8 (N.D. Cal. Apr. 22, 2010) (service award of $20,000 was "well justified" given plaintiffs' efforts on behalf of the class) (compiling cases); *In re Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380, 1393, 1396 (2010) (affirming $10,000 service awards); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1330 (W.D. Wash. 2009) ("When compared to service awards in other cases, the $7,500 payments requested here are justified."); *In re Ins. Brokerage Antitrust*

BLOOD HURST & O'REARDON, LLP

1  *Litig.*, No. 04-5184 (GEB), 2007 U.S. Dist. LEXIS 40729, at *68 (D.N.J. June 5,

2  2007) (approving incentive award of $10,000); *Van Vranken*, 901 F. Supp. at 300

3  (approving service award of $50,000).

4  **VII.   CONCLUSION**

5        For all the foregoing reasons, Plaintiffs respectfully request that the Court

6  confirm certification of the Settlement Class, grant final approval of the

7  Settlement and approve Class Counsel's application for attorneys' fees and

8  expenses and service awards for the Plaintiffs.

9  Dated: March 11, 2014              BLOOD HURST & O'REARDON, LLP
                                      TIMOTHY G. BLOOD (149343)
10                                     THOMAS J. O'REARDON II (247952)

11
                                      By:    *s/ Timothy G. Blood*
12                                          TIMOTHY G. BLOOD

13                                     701 B Street, Suite 1700
                                      San Diego, CA 92101
14                                     Telephone: (619) 338-1100
                                      Facsimile: (619) 338-1101
15                                     tblood@bholaw.com
                                      lhurst@bholaw.com
16                                     toreardon@bholaw.com

17                                     *Attorneys for Plaintiffs and Class*
                                      *Counsel*
18
                                      HOFFMAN & FORDE
19                                     SCHUYLER V.V. HOFFMAN V
                                        (255632)
20                                     DANIEL R. FORDE (248461)
                                      3033 Fifth Avenue, Suite 225
21                                     San Diego, CA 92103
                                      Telephone: (619) 546-7880
22                                     Facsimile: (619) 546-7881
                                      shoffman@hoffmanforde.com
23                                     dforde@hoffmanforde.com

24                                     ROBBINS ARROYO LLP
                                      GREGORY E. DEL GAIZO (247319)
25                                     600 B Street, Suite 1900
                                      San Diego, CA 92101
26                                     Telephone: 619-525-3990
                                      Facsimile: 619-525-3991
27                                     gdelgaizo@robbinsarroyo.com

28                                     *Attorneys for Plaintiffs*

BLOOD HURST & O'REARDON, LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed March 11, 2014.

_s/ Timothy G. Blood_
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O'REARDON, LLP

00069599